Nos. 24-1218, 24-1270

———————————————

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————————————

STATE OF MARYLAND,
*Plaintiff-Appellee*,

v.

3M COMPANY,
*Defendant-Appellant*.

———————————————

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION

———————————————

STATE OF SOUTH CAROLINA,
*ex rel.* Alan M. Wilson, in his official capacity
as Attorney General of the State of South Carolina,
*Plaintiff-Appellee*,

v.

3M COMPANY,
*Defendant-Appellant*.

———————————————

On Appeal from the United States District Court
for the District of Maryland, No. 1:23-cv-01836, and
the United States District Court for the District of South Carolina,
Nos. 2:18-mn-2873 and 2:23-cv-05979

———————————————

# OPENING BRIEF FOR
# DEFENDANT-APPELLANT 3M COMPANY

———————————————

Amir C. Tayrani
Katherine Moran Meeks
Zachary Tyree
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com
kmeeks@gibsondunn.com
ztyree@gibsondunn.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

*Counsel for 3M Company*

# DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Defendant-Appellant 3M Company states that it is a publicly traded corporation that does not have any parent corporation. No publicly held corporation owns 10% or more of 3M Company's stock. 3M Company is not a trade association, and no other publicly held corporation or publicly held entity has a direct financial interest in the outcome of this litigation.

## TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION........................................................3

STATEMENT OF THE ISSUE ...............................................................4

STATEMENT OF THE CASE..................................................................4

      A.     PFAS and MilSpec AFFF ...........................................4

      B.     The AFFF Multidistrict Litigation ..............................6

      C.     Maryland's Two Suits .................................................7

      D.     South Carolina's Two Suits ......................................10

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT ..........................................................................................16

   I.     3M Acted Under Federal Authority. ..................................19

   II.    The States' Suits Relate To Actions 3M Took Pursuant To Its Authority As A Federal Contractor.....................................19

      A.     3M Plausibly Alleged That These Suits Are Related To Its Production Of MilSpec AFFF For The U.S. Military. ........20

           1.     The States Seek Recovery For Alleged PFAS Contamination That Derives At Least In Part From MilSpec AFFF. ............................................22

           2.     The Alleged MilSpec AFFF And Non-AFFF PFAS Are Commingled. ..........................................25

           3.     A Federal Court Must Decide The Causal Source Of The Alleged PFAS Contamination...........................26

      B.     Both District Courts Erroneously Failed To Credit 3M's Theory Of The Case.................................................28

C.    The States' Disclaimers Cannot Sever The Connection To MilSpec AFFF. ...................................................................34

III.    3M Asserted A Colorable Federal Defense. .......................................42

CONCLUSION .........................................................................................46

STATEMENT REGARDING ORAL ARGUMENT ............................................48

**Page(s)**

**Cases**

*Agyin v. Razmzan,*
    986 F.3d 168 (2d Cir. 2021) ...................................................17, 18, 30

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.,*
    357 F. Supp. 3d 1391 (J.P.M.L. 2018) ...........................................6, 7

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.,*
    2022 WL 4291357 (D.S.C. Sept. 16, 2022) ...............................44, 45

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...........................................................................17, 30

*Baker v. Atl. Richfield Co.,*
    962 F.3d 937 (7th Cir. 2020) ........................ 22, 27, 28, 35, 36, 41, 42

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................29

*Betzner v. Boeing Co.,*
    910 F.3d 1010 (7th Cir. 2018) .........................................................30

*Boyle v. United Techs. Corp.,*
    487 U.S. 500 (1988)...........................................................................7, 43

*BP P.L.C. v. Mayor & City Council of Baltimore,*
    141 S. Ct. 1532 (2021).......................................................................33, 34

*Brantley v. Borg-Warner Morse Tec, Inc.,*
    2012 WL 1571129 (S.D. Cal. May 3, 2012) ......................................38

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.,*
    996 F.3d 243 (4th Cir. 2021) ............................. 17, 20, 21, 32, 42, 43

*Cuomo v. Crane Co.,*
    771 F.3d 113 (2d Cir. 2014) .............................................................22, 27

*Curiale v. A. Clemente, Inc.,*
    2023 WL 4362722 (D.N.J. July 5, 2023) ..........................................37

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014)..................................................................17, 21, 29, 30

*Dougherty v. A O Smith Corp.*,
    2014 WL 3542243 (D. Del. July 16, 2014)......................................37

*Ellenburg v. Spartan Motors Chassis, Inc.*,
    519 F.3d 192 (4th Cir. 2008) ...............................................29, 30, 31

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981)...........................................................................39

*Jamison v. Wiley*,
    14 F.3d 222 (4th Cir. 1994) .............................................................17

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) ...........................................................31

*Kircher v. Putnam Funds Tr.*,
    547 U.S. 633 (2006)...........................................................................17

*Lee v. Norfolk S. Ry. Co.*,
    802 F.3d 626 (4th Cir. 2015) ...........................................................41

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
    590 U.S. 405 (2020)...........................................................................40

*Maine v. 3M Co.*,
    2023 WL 4758816 (D. Me. July 26, 2023) ......................................32

*Moore v. Elec. Boat Corp.*,
    25 F.4th 30 (1st Cir. 2022)................................................................43

*Mulcahey v. Columbia Organic Chems. Co.*,
    29 F.3d 148 (4th Cir. 1994) .............................................................31

*Nessel v. Chemguard, Inc.*,
    2021 WL 744683 (W.D. Mich. Jan. 6, 2021)..............................36, 37

*Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*,
    865 F.3d 181 (4th Cir. 2017) ...........................................................31

*Illinois ex rel. Raoul v. 3M Co.*,
2023 WL 6160610 (C.D. Ill. Sept. 21, 2023) .....................................32

*Ripley v. Foster Wheeler LLC*,
841 F.3d 207 (4th Cir. 2016) .............................................16, 43, 46

*Sawyer v. Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) ......................... 7, 13, 18, 19, 20, 26, 42

*Stark v. Starr*,
94 U.S. 477 (1876)...........................................................................41

*Stone v. Instrumentation Lab'y Co.*,
591 F.3d 239 (4th Cir. 2009) .............................................................16

*Texas v. Kleinert*,
855 F.3d 305 (5th Cir. 2017) .............................................................30

*Tozer v. LTV Corp.*,
792 F.2d 403 (4th Cir. 1986) .............................................................46

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).........................................................................39

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007).............................................................17, 19, 32

*Willingham v. Morgan*,
395 U.S. 402 (1969)................................ 3, 14, 15, 16, 17, 20, 22, 32, 35, 43, 46

*Wood v. Crane Co.*,
764 F.3d 316 (4th Cir. 2014) .............................................................38

**Statutes**

28 U.S.C. § 1442(a)(1).............................. 1, 3, 4, 8, 13, 16, 19, 20, 22, 33

**Page(s)**

**Regulations**

48 C.F.R. § 9.203 .................................................................................5

**Other Authorities**

Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film
    Forming Foam (AFFF) Wastes for Recovery of Its Active
    Ingredients* (Oct. 1980).......................................................................44

EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid
    and Its Salts* (Nov. 4, 2002) ...............................................................44

**INTRODUCTION**

This appeal arises from attempts by the State of Maryland and the State of South Carolina to evade federal jurisdiction by bringing two cases—one in federal court, and one in state court—to recover for a single, indivisible injury. In parallel cases consolidated in this Court, the States seek to hold 3M Company ("3M") liable for manufacturing and selling per- and polyfluoroalkyl substances ("PFAS"), a family of chemical compounds that have allegedly contaminated some of the States' natural resources. The States allege that much of that contamination resulted from 3M's production of aqueous film-forming foam ("AFFF"), a product 3M supplied to the U.S. military pursuant to rigorous military specifications ("MilSpec"). All parties agree that the States' claims arising from MilSpec AFFF contamination should be litigated in federal court under the federal-officer removal statute.

But in order to pursue part of their claims in their preferred state-court forum, each State split its claim for PFAS contamination into two cases: one seeking recovery for harm from AFFF sources, the other for harm from non-AFFF sources. The purported "non-AFFF" cases expressly disclaimed the States' intent to seek relief for PFAS contamination caused by AFFF. 3M removed both the "AFFF" and "non-AFFF" cases to federal court under 28 U.S.C. § 1442(a)(1), which provides jurisdiction over any lawsuit that has a connection to or association with a

defendant's actions as a federal contractor and that implicates a colorable government-contractor defense.

The States' disclaimers rest on a fiction. 3M plausibly alleged in its notices of removal that there is no way to tell whether particular compounds in the environment stemmed from AFFF or non-AFFF sources, because both AFFF and non-AFFF sources of PFAS release some of the same compounds (such as PFOS or PFOA). A PFAS compound from AFFF sources is chemically indistinguishable from the same PFAS compound from non-AFFF sources, and the two commingle in the environment over time through multiple potential pathways in ground and surface water, air, and soil. And the complaints themselves allege that the States are seeking damages and injunctive relief with respect to numerous sites where PFAS from AFFF and non-AFFF sources combined to cause a single injury. 3M's government-contractor defense is available as to all such sites.

The district courts in both the Maryland and South Carolina cases nevertheless concluded that the States' disclaimers of AFFF liability precluded 3M from asserting its federal government-contractor defense in the so-called non-AFFF cases. These rulings were error: The courts simply ignored the well-pleaded facts in 3M's notice of removal. Indeed, the District of Maryland expressly *stated* that it was viewing the facts "in the light most favorable to Plaintiff," JA222; that error alone requires reversal. And the States' disclaimers—to which the courts below gave dispositive

weight—rest on the false premise that a factfinder can separate contamination originating from AFFF and non-AFFF sources of PFAS.  Because contamination from AFFF and non-AFFF sources of PFAS cannot be separated, the juries in these "non-AFFF" cases will necessarily be asked to impose liability on 3M for alleged contamination attributable to MilSpec AFFF—despite the States' ineffectual disclaimers to the contrary.

Congress provided for federal-officer removal jurisdiction precisely so that federal courts can resolve merits questions—such as the accuracy of a model for supposedly distinguishing between AFFF and non-AFFF sources of PFAS and whether the absence of such a model triggers the federal government-contractor defense—that drive the availability of defenses for actions taken under federal authority.  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  The district courts erred in remanding these cases that implicate 3M's federal government-contractor defense.

This Court should reverse.

## STATEMENT OF JURISDICTION

This appeal arises from 3M's removal of cases from state court to federal court.  In each case, the district court had federal-officer jurisdiction under 28 U.S.C. § 1442(a)(1).  This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "an order remanding a case to the State court from which it was removed"

pursuant to § 1442(a)(1) "shall be reviewable by appeal."  In the Maryland case, the district court's order was entered on February 12, 2024, and 3M timely noticed its appeal on March 12, 2024.  JA221; JA230.  In the South Carolina case, the district court's order was entered on February 29, 2024, and 3M timely noticed its appeal on March 28, 2024.  JA372; JA379.

## STATEMENT OF THE ISSUE

Whether each district court erred in holding that federal jurisdiction is lacking under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), when the States' claims alleging PFAS contamination of their natural resources are plausibly related to MilSpec AFFF sources of PFAS and thus necessarily implicate 3M's federal government-contractor defense.

## STATEMENT OF THE CASE

### A.    PFAS and MilSpec AFFF

PFAS are man-made organic chemicals used in a broad variety of products, including consumer goods, food packaging, cookware, and upholstery.  JA222–223. PFAS are also key ingredients in AFFF, a firefighting foam widely used by the U.S. military on bases, airfields, and ships to extinguish life-threatening, fuel-based fires. JA221; JA16.   In settings where fuel fires are both "inevitable and potentially devastating," AFFF saves lives and protects property.  JA16.

4

Although the U.S. Naval Research Laboratory developed AFFF, the government required the assistance of chemical manufacturers to maintain a sufficient supply. JA16. The Department of Defense thus developed detailed specifications (MilSpec) for use by private manufacturers. JA9–10. AFFF suppliers must use rigorous inspection and testing procedures to "assure supplies . . . conform to [the] prescribed requirements." U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* 3 (Nov. 21, 1969). The Navy carefully tests AFFF products for compliance with the MilSpec, after which it adds approved products to the "Qualified Products List." *Id.* at 2; *see also* 48 C.F.R. § 9.203(a).

Until recently, the specifications mandated that any AFFF produced for the U.S. military contain "fluorocarbon surfactants"—a class of PFAS chemicals. JA17. While the MilSpec no longer identifies PFAS by name, it still effectively requires the presence of these chemicals. JA17. As the Department of Defense acknowledges in the most recent MilSpec, it is not currently possible for manufacturers to eliminate PFAS entirely "while still meeting all other military specification requirements." JA17 (quoting MIL-PRF-24385F(4) § 6.6 (2020), https://tinyurl.com/yxwotjpg).

3M manufactured and sold MilSpec AFFF to the federal government for over three decades. JA17–18; JA246–247. The U.S. military has used 3M's MilSpec

AFFF at military facilities across the country, including at numerous sites in Maryland and South Carolina. JA18–19; JA247–248, JA251–252; *see also* JA142; JA328. In Maryland, those sites include, among many others, the Naval Research Lab, Chesapeake Bay Detachment; Joint Base Andrews; Fort Meade; the former Fort Meade Tipton Airfield; and Webster Field Annex of Naval Air Station Patuxent River. JA18–19 (citing JA163–164). In South Carolina, the military sites include, among many others, the Marine Corps Recruit Depot Parris Island; Marine Corps Air Station Beaufort; Charleston Naval Complex; Joint Base Charleston Air; and Myrtle Beach Air Force Base. JA247–248 (citing JA349).

### B. The AFFF Multidistrict Litigation

Over the past several years, States, public water providers, and private plaintiffs have brought products-liability suits against manufacturers of AFFF, alleging that "AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOA or PFOS"—two particular PFAS compounds—"into local groundwater and contaminated drinking water supplies." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). The Judicial Panel on Multidistrict Litigation centralized these actions into a single proceeding—the AFFF multidistrict litigation ("MDL")—in the District of South Carolina. *Id.* at 1396.

The Judicial Panel on Multidistrict Litigation concluded that consolidation would "promote the just and efficient conduct of this litigation." 357 F. Supp. 3d at 1394. The Panel drew that conclusion in part because "the AFFF manufacturers likely will assert identical government contractor defenses in many of the actions." *Id.* The federal government-contractor defense immunizes government contractors from state tort liability when they produce equipment for the U.S. military pursuant to "reasonably precise specifications" issued by the government. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255–56 (4th Cir. 2017) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). In the MDL, the manufacturers are asserting the government-contractor defense based on their production of MilSpec AFFF for the Department of Defense.

### C.     Maryland's Two Suits

On May 30, 2023, the State of Maryland filed two separate actions against 3M and other defendants. *See* JA40, JA126. Maryland framed the complaints as seeking recovery for separate sources of PFAS contamination. One complaint targets PFAS stemming from AFFF, while the other targets PFAS from "non-AFFF" sources. Each complaint contains a disclaimer that purports to limit Maryland's damages to the specific source of PFAS at issue in that case. Thus, the first case seeks recovery for "harms done . . . from Defendants' AFFF Products," while supposedly excluding "any contamination from PFAS that is not related to the manufacture and use of

AFFF." JA133. The second case seeks the inverse, praying for damages from and injunctive relief for "any PFAS contamination" except for "contamination caused by AFFF or fluorosurfactants when used as ingredients of AFFF." JA46.

The allegations in the two suits otherwise substantially overlap. Both complaints assert that 3M manufactured, marketed, and sold PFAS products in Maryland. JA42, JA47–48; JA130–131, JA135. Both complaints allege that those products have contaminated the same natural resources: the groundwater, surface water, coastal resources, estuaries, sediments, soils, submerged lands, and animal and plant species in that State. JA67–70; JA158–163. Both complaints assert that PFAS have reached the Chesapeake Bay and harmed the exact same species of wildlife. *See, e.g.*, JA65, JA69 ("striped bass, blue crabs, and oysters"); JA156, JA160 ("striped bass, blue crabs, and oysters"). And both actions assert the same causes of action against 3M: defective design and failure to warn, public nuisance, trespass, negligence, and violations of certain Maryland environmental statutes. JA95–109; JA187–202.

3M removed both cases to the U.S. District Court for the District of Maryland, asserting federal jurisdiction under the federal-officer removal statute. *See* JA9–11 (citing 28 U.S.C. § 1442(a)(1)). The State did not object to 3M's removal of the "AFFF" suit, and the Judicial Panel on Multidistrict Litigation transferred that case to the MDL. *See* JA221–222.

Maryland did, however, object to removal of the so-called "non-AFFF" case, and moved to remand that case to state court. Mem. in Supp. of Mot. for Recons. and Remand at 3, *Maryland v. 3M Co.*, No. 1:23-cv-01836 (D. Md. Aug. 9, 2023), ECF 17-1. 3M's opposition brief explained that its notice of removal contained 13 paragraphs of detailed factual allegations explaining that, notwithstanding Maryland's disclaimer, the "non-AFFF" case is inextricably intertwined with 3M's production of MilSpec AFFF. *See* Opp. to Mot. for Reconsideration and Remand at 5, *Maryland v. 3M Co.*, No. 1:23-cv-01836 (D. Md. Aug. 23, 2023), ECF 27 (citing JA18–25). As alleged in the notice, PFAS from all sources became "commingled" in natural resources at numerous sites "across the State." JA24. The commingled PFAS allegedly caused a single, indivisible harm—contamination from PFOS and PFOA—to many of the same natural resources. JA18–19, JA22–26. Because PFAS from different sources (including MilSpec AFFF) had allegedly contaminated the same locations, 3M explained, it intended to invoke the federal government-contractor defense in the "non-AFFF" case as well. JA9–10, JA28–33. Accordingly, the case fell within the federal-officer removal statute. JA10.

The Judicial Panel on Multidistrict Litigation nevertheless declined to transfer the non-AFFF case to the MDL, JA216–219, and the district court granted Maryland's motion to remand. The court analyzed removability without mentioning—much less assuming the truth of—any of the factual allegations in

3M's notice of removal. Instead, viewing the facts "in the light most favorable to Plaintiff," the district court accepted Maryland's "disclaimer" of AFFF-related damages as "effective." JA222, JA226–227. "By excluding MilSpec AFFF and all other types of AFFF from its Complaint," the district court concluded, "the State has abandoned any claims in this case that would allow 3M to utilize the government contractor defense." JA227. "3M therefore fails to demonstrate the requisite nexus or colorable federal defense to sustain removal to federal court under the federal officer removal statute." JA228.

3M timely noticed this appeal.

### D. South Carolina's Two Suits

South Carolina's two suits followed a similar trajectory. On August 7, 2023, South Carolina filed suit against 3M and other defendants, supposedly limited to harm caused by PFAS from non-AFFF sources. Like Maryland's complaint before it, South Carolina's complaint included an express disclaimer: "The State is not seeking to recover through this Complaint any relief for contamination or injury related to AFFF or AFFF products used at airports, military bases, or certain industrial locations." JA275–276. Two months later, South Carolina filed a second action, this time purporting to "confine[]" damages and injunctive relief to "AFFF contamination" while forswearing "damages caused by other forms of PFAS pollution." JA321.

As in the Maryland cases, the factual allegations in South Carolina's complaints overlap substantially. Both complaints assert that 3M's PFAS products have contaminated some of the same natural resources: groundwater, surface waters, wildlife, soils, and sediments "throughout the State." JA303–304, JA306, JA313; JA321, JA360. Three of the four causes of action in the "non-AFFF" complaint (public nuisance, trespass, and unfair trade practices) also appear in the "AFFF" complaint. JA305–312; JA354–359. And the complaints seek overlapping damages and injunctive relief, including for alleged groundwater contamination and for the PFAS investigation conducted by the South Carolina Department of Health and Environmental Control. JA119; JA275, JA310, JA313; JA320, JA344, JA346–347, JA357.

3M removed both cases to the U.S. District Court for the District of South Carolina. *See* JA237–240. As it did with the Maryland cases, 3M asserted federal jurisdiction under the federal-officer removal statute. Because the ongoing MDL is located in the District of South Carolina, 3M removed the cases directly to the MDL. South Carolina did not object to 3M's removal of the "AFFF" suit. *See* Mem. in Supp. of Mot. to Remand at 6, *South Carolina v. 3M Co.*, No. 2:23-cv-05979 (D.S.C. Dec. 20, 2023), ECF 8-1.

As in the District of Maryland, 3M's notice of removal set forth factual allegations establishing the close relationship between South Carolina's purported

"non-AFFF" case and MilSpec AFFF. *See* JA247–253. 3M explained that PFAS from both non-AFFF and MilSpec AFFF sources have "commingled" in natural resources "across South Carolina" and allegedly caused an indivisible harm at some of the same locations, including Lake Conestee, the Edisto River, and in "wastewater and biosolids," among others. JA247–253. 3M thus asserted that it intended to invoke the federal government-contractor defense in the "non-AFFF" case, which renders it removable. JA238–239, JA253.

South Carolina moved to remand the "non-AFFF" case but not the "AFFF" case to state court. Mem. in Supp. of Mot. to Remand at 6, *South Carolina*, No. 2:23-cv-05979. The district court granted that motion, concluding that "the disclaimers moot 3M's government contractor defense because . . . it cannot be held liable in this case for PFAS contamination originating from AFFF." JA376. As a result, the court concluded, the conduct with which 3M was charged "is not connected to the alleged federal authority," and "federal officer removal is not available." JA376.

3M again timely noticed an appeal, and this Court entered an order consolidating the South Carolina and Maryland appeals for briefing and argument. Dkt. 22; Dkt. 24.

# SUMMARY OF ARGUMENT

There is no such thing as a "non-AFFF" PFAS suit where, as here, PFAS from MilSpec AFFF is commingled in the environment with PFAS from non-AFFF sources. 3M's notices of removal plausibly allege that AFFF and non-AFFF sources release some of the same PFAS compounds into the environment, and the complaints themselves allege that some of the sites at issue were contaminated by PFAS from both sources. The district courts have jurisdiction over these cases under 28 U.S.C. § 1442(a)(1) because 3M's government-contractor defense is implicated at every site that could have been contaminated by MilSpec AFFF.

I.    3M acted under federal authority when it manufactured and supplied MilSpec AFFF to the U.S. military.

II.    These supposedly "non-AFFF" suits plainly have a "connection or association" to that exercise of federal authority. *Sawyer*, 860 F.3d at 258. That is because—based on the plausible allegations in 3M's notices of removal—these suits seek to recover for alleged harms that were caused at least in part by MilSpec AFFF. Both States seek remediation of natural resources where PFAS from military and non-military sources mixed in the environment. The PFAS compounds, like PFOS and PFOA, that may come from both sources are chemically indistinguishable in the environment. Although the States purport to disclaim any relief for MilSpec AFFF, in reality the States cannot segregate the discrete sources of contamination at every

site.  Accordingly, any damages award or abatement order will necessarily sweep in PFAS contamination for which 3M has a government-contractor defense.  At a minimum, the parties will need to present expert testimony or other evidence to assist the jury in determining whether there is an accurate means of apportioning liability and remedies between MilSpec AFFF and non-AFFF sources.  The federal-officer removal statute entitles 3M to a federal forum in which to litigate (1) whether contamination from MilSpec AFFF and non-AFFF PFAS can be accurately separated, and (2) if not, whether 3M's federal government-contractor defense bars recovery at sites where MilSpec AFFF and non-AFFF PFAS are indistinguishably intermingled.  Indeed, federal-officer removal is designed for the "primary purpose[]" of allowing such defenses to be "litigated in the federal courts." *Willingham*, 395 U.S. at 407.

The district courts in both the Maryland and South Carolina cases erred by (1) ignoring the well-pleaded facts in 3M's notices of removal that PFAS from military and non-military sources is commingled in the environment and chemically indistinguishable, and (2) accepting the States' disclaimers at face value.  Both courts also relied on nonbinding opinions by a handful of other district courts that remanded similar suits against 3M to state court.  But those courts likewise failed to grapple with the significance of the complex causation issues that arise because of the commingling of PFAS from both non-AFFF and MilSpec AFFF sources.

The States' purported disclaimers that they are seeking damages and injunctive relief only for alleged PFAS contamination from "non-AFFF" sources do not alter the analysis. These disclaimers rest on the fiction that the factfinder can separate PFAS from AFFF and non-AFFF sources, even though they are chemically indistinguishable and commingle in the environment. Notwithstanding the States' disclaimers, the juries in these cases will necessarily be asked to impose liability based on 3M's production of MilSpec AFFF, triggering 3M's right to raise its federal government-contractor defense. Although the States might contend *at trial* that they can use expert modeling to allocate contamination at a particular site to MilSpec AFFF and non-AFFF sources of PFAS, any such contention contradicts the notices' plausible allegations and is therefore irrelevant at this stage. And even if such modeling were feasible, the factfinder in each case would still need to decide whether the modeling is accurate and, if so, what percentage of PFAS contamination at each site traces back to MilSpec AFFF. Regardless of the States' purported disclaimers, 3M "should have the opportunity to present [its] version of the facts to a federal, not a state, court" and to argue to the federal court that the absence of accurate modeling means recovery is foreclosed by its federal government-contractor defense. *Willingham*, 395 U.S. at 409.

III. 3M has a colorable federal government-contractor defense in these cases. 3M's notices of removal plausibly allege that it provided MilSpec AFFF to

the U.S. military according to reasonably precise specifications and that the government was aware of the risks of PFAS. Just as the States' "AFFF" suits indisputably implicate a plausible federal government-contractor defense, so too do their self-styled "non-AFFF" suits—for precisely the same reasons the nexus requirement is satisfied.

Because 3M is entitled to a federal forum in which to raise its colorable federal defense to the States' claims, this Court should reverse.

## STANDARD OF REVIEW

This Court reviews "issues of subject matter jurisdiction, including removal," *de novo*. *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016). The Court also reviews questions of statutory interpretation *de novo*. *Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 242–43 (4th Cir. 2009).

## ARGUMENT

3M satisfies the requirements for federal-officer removal in these two "non-AFFF" cases. The federal-officer removal statute, 28 U.S.C. § 1442(a)(1), authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action from state to federal court if the action is "for or relating to any act under color of such office." "One of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts." *Willingham*, 395 U.S. at 407. For that reason, the Supreme Court and this Court

have repeatedly instructed that § 1442(a)(1) "must be 'liberally construed'" in favor of removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 251 (4th Cir. 2021). The strong federal policy in favor of removal of these actions "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham*, 395 U.S. at 407.

The statute provides an exception to the ordinary well-pleaded complaint rule. It permits a federal officer, or a party that acted under such an officer, to remove an action if he pleads a colorable federal defense to at least one claim in the case. *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644–45 n.12 (2006); *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994). A removing defendant need not provide "[e]vidence" necessary to establish federal jurisdiction. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Instead, a "notice of removal need include only a *plausible allegation*" of facts that would entitle the defendant to a federal forum. *Id.* (emphasis added). A familiar standard thus applies: A court "should assume the[] veracity" of a removal notice's "well-pleaded factual allegations" and assess jurisdiction on that basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Agyin v. Razmzan*, 986 F.3d 168, 180–81 (2d Cir. 2021) ("the same liberal rules employed in testing the sufficiency of a pleading should apply to

appraise the sufficiency of a defendant's notice of removal" under the federal-officer removal statute).

A private defendant seeking removal under § 1442(a)(1) must satisfy three elements: (1) "it 'act[ed] under' a federal officer"; (2) "the charged conduct was carried out for o[r] in relation to the asserted official authority"; and (3) "it has 'a colorable federal defense.'" *Sawyer*, 860 F.3d at 254. 3M's notices of removal establish all three elements of federal-officer removal. South Carolina and Maryland each attempted to evade a federal forum by artificially splitting their claims for alleged PFAS contamination of the same waterways and other natural resources into "AFFF" and "non-AFFF" actions. But each action seeks recovery for overlapping alleged contamination at the same locations caused by PFAS from AFFF sources commingled with PFAS from non-AFFF sources. And the notices of removal—which are controlling here—make clear that those sources of PFAS are chemically indistinguishable, which means that any verdict against 3M would rest, in part, on its production of MilSpec AFFF for the U.S. military and thus directly implicate its federal government-contractor defense. Moreover, resolution of whether the alleged contamination at a particular site can be allocated between MilSpec AFFF and non-AFFF sources of PFAS—a complex fact and causation question reserved for a federal, not state, forum—will ultimately inform the applicability of 3M's federal

government-contractor defense as to that site. Because the non-AFFF cases squarely implicate 3M's federal defense, removal under § 1442(a)(1) is appropriate.

## I.     3M Acted Under Federal Authority.

3M readily satisfies the first element of the federal-officer removal test: that 3M acted under federal authority. "[A]cting under" means that the private party "assist[ed], or . . . help[ed] carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphases omitted). 3M indisputably acted under federal authority when it manufactured and supplied AFFF to the U.S. military pursuant to rigorous specifications. Neither the district courts nor the States suggested otherwise. *See Sawyer*, 860 F.3d at 255 ("[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured for the government." (emphasis omitted)).[1]

## II.    The States' Suits Relate To Actions 3M Took Pursuant To Its Authority As A Federal Contractor.

The federal-officer removal statute authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action that is "for or

---

[1] South Carolina nominally contested this prong below, but its only argument was that the disclaimer severed any connection between this case and 3M's MilSpec AFFF production. *See* Mem. in Supp. of Mot. to Remand at 8–9, *South Carolina*, No. 2:23-cv-05979. The State's "acting under" argument, therefore, stands or falls with its "relating to" argument. *See infra* II (explaining why these cases have a connection to MilSpec AFFF).

relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). 3M alleged a sufficient relationship between the non-AFFF suits and 3M's production of MilSpec AFFF for the U.S. military—particularly given the capacious "for or relating to" language of § 1442(a)(1). Contrary to the district court decisions, the States' purported disclaimers of AFFF-related liability in the non-AFFF cases do not affect that conclusion.

A. **3M Plausibly Alleged That These Suits Are Related To Its Production Of MilSpec AFFF For The U.S. Military.**

3M's notices of removal plausibly allege that at least "one claim" in each of the Maryland and South Carolina suits, *Sawyer*, 860 F.3d at 257–58, is "for or relating to" 3M's production of MilSpec AFFF, 28 U.S.C. § 1442(a)(1). The "for or relating to" language in the federal-officer removal statute, which must be construed liberally, requires only "a connection or association between the act in question and the federal office." *Arlington Cnty.*, 996 F.3d at 251, 256. This "connection or association" test sweeps more broadly than "the old 'causal nexus' test" that applied under the pre-2011 version of the statute. *Id.* at 256. And even the former standard did not require "an airtight case on the merits" showing a "causal connection" between the claims and the federal office. *Sawyer*, 860 F.3d at 258; *see also Willingham*, 395 U.S. at 407 (explaining, under the old standard, that a defendant "need not win his case before he can have it removed"). In deciding whether the required connection exists, this Court must assume the truth of all plausible

allegations in the notice of removal, *Dart Cherokee*, 574 U.S. at 89, and "credit" the defendant's "theory of the case," *Arlington Cnty.*, 996 F.3d at 256.

Maryland's and South Carolina's own allegations, coupled with the well-pleaded facts in 3M's notices of removal, establish the required "connection or association" between the claims and 3M's work as a federal contractor. *Arlington Cnty.*, 996 F.3d at 256. Each of the States' AFFF and non-AFFF complaints seeks damages for and abatement of alleged PFAS contamination of many of the same waterways and other natural resources. Identical PFAS compounds from AFFF and non-AFFF sources intermingled at those sites and caused the States a single alleged injury. Neither Maryland nor South Carolina can readily identify how much of the contamination at each site resulted from MilSpec AFFF and how much traces to other sources. Accordingly, any award of damages or injunctive relief will necessarily encompass PFAS contamination from military sources, triggering 3M's right to raise its federal government-contractor defense.

At a minimum, the factfinder will need to consider expert testimony or other evidence that attempts to apportion the alleged contamination between MilSpec AFFF and non-AFFF sources of PFAS—for example, evidence that shows how PFAS from specific sites migrates through groundwater or other media. 3M has a right to a federal forum in which to contest that evidence and to argue that recovery at a particular site is barred by its federal government-contractor defense because the

State cannot accurately separate contamination attributable to MilSpec AFFF and non-AFFF sources. The court's and jury's assessment of the accuracy of that causation analysis, in turn, will inform the extent to which 3M's government-contractor defense is applicable as to each allegedly contaminated site. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020); *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014). And any lawsuit that requires the court to decide the applicability of a defense attributable to a defendant's federal-officer status necessarily "relat[es] to" the exercise of federal authority. 28 U.S.C. § 1442(a)(1). Indeed, federal-officer removal is designed for the "primary purpose[]" of allowing such defenses to be "litigated in the federal courts." *Willingham*, 395 U.S. at 407.

### 1. The States Seek Recovery For Alleged PFAS Contamination That Derives At Least In Part From MilSpec AFFF.

Starting with Maryland's lawsuits, the non-AFFF action seeks recovery for PFAS contamination that allegedly harms, among other things, "striped bass, blue crabs, and oysters" in the Chesapeake Bay. JA19; JA65, JA69. But Maryland's AFFF case claims the exact same injury: harm to "striped bass, blue crabs, and oysters" in the Chesapeake Bay. *See* JA19; JA156, JA160. According to the State itself, PFAS from *both* AFFF and non-AFFF sources contributed to this alleged contamination that injured the same species in the Chesapeake Bay. *See* JA65, JA69; JA156, JA160; *see also* JA19 (explaining that the "non-AFFF" action "seeks to

recover for contamination from the same PFAS chemicals allegedly contained in MilSpec AFFF").

As alleged in 3M's notice of removal, the PFAS contamination that Maryland alleges has occurred in the Chesapeake Bay derives at least in part from MilSpec AFFF. *See* JA19, JA22. The notice of removal describes both Joint Base Andrews and the Naval Research Lab, Chesapeake Bay Detachment, as sites where MilSpec AFFF was used. JA18–19; *see* JA132, JA163–164 (Maryland alleging that these sites are "confirmed sources of PFAS contamination"). And the notice further alleges that "AFFF-related contamination" from both sites "migrated to and polluted groundwater and surface water and has adversely affected biota in the surrounding areas." JA19 (quoting JA132); *see* JA22. Joint Base Andrews, in particular, is located in an area where water seeps into the ground to replenish groundwater. JA22. The groundwater and surface water from Joint Base Andrews then flow toward the Chesapeake Bay, among other areas. JA22. The allegations in 3M's notice of removal thus give rise to a plausible inference that the contamination by the same PFAS compounds for which Maryland seeks damages in *both* cases originates at least in part from MilSpec AFFF.

Similar examples abound. Maryland's non-AFFF complaint alleges that PFAS seeped into the Potomac River. Meanwhile, Joint Base Andrews, a site Maryland identifies as a source of MilSpec AFFF, generates surface water and

groundwater runoff that flows into the Potomac. JA22; JA65, JA69; JA162. Together, these allegations point to the conclusion that the runoff from Joint Base Andrews caused at least some of the PFAS contamination in the Potomac at issue in this case.

Repeating the same theme, Maryland's twin suits each pursue damages for, and an injunction to abate, groundwater contamination. As Maryland alleges, PFAS migrate from different source points and enter the State's groundwater. *See* JA68 (alleging that PFAS from any source "mobilizes in and through groundwater sources to reach areas beyond the initial sources of contamination"); JA159 (similar). And as 3M's notice of removal asserts, these sources of alleged groundwater contamination include military bases and other federal facilities. JA21. Indeed, in multiple cases currently pending in the AFFF MDL, municipalities in Maryland claim that PFAS contaminated their drinking water, and they identify the use of "AFFF products" at "military bases and installations" as sources of the alleged contamination. JA20.

South Carolina's non-AFFF suit likewise seeks damages for, and abatement of, contamination plausibly caused by MilSpec AFFF. *See* JA248–253. To give one example, South Carolina's non-AFFF complaint claims contamination of Lake Conestee, which is near an Army facility where MilSpec AFFF is used for firefighting training. JA248; JA298–299. Similarly, South Carolina seeks recovery

for alleged PFAS contamination of "eight (8) major river basins" in the State, many of which are located near U.S. military bases that allegedly use MilSpec AFFF. JA251–252 (quoting JA298); *see also* JA343–349.

Like Maryland's complaints, South Carolina's AFFF and non-AFFF complaints claim that PFAS caused injury to the same species of wildlife. *See* JA303 ("oysters, fish, and crabs"); JA345 ("blue crab, freshwater fish, and oysters"). And both seek cleanup costs for PFAS that "migrate[d] to groundwater," including from federal facilities, JA254; *see also* JA251–252; JA303; JA350. As in Maryland, multiple municipalities in South Carolina have filed suits in which they claim that MilSpec AFFF has contaminated their drinking water supplies—the contamination for which South Carolina seeks recovery in this case. JA249. Both of South Carolina's complaints also seek to recoup costs incurred for a single state investigation into PFAS contamination from both non-AFFF and MilSpec AFFF sources. JA250, JA252–253; JA275, JA310; JA320, JA344, JA346–347, JA357.

### 2. The Alleged MilSpec AFFF And Non-AFFF PFAS Are Commingled.

As 3M's notices of removal explain, no chemical difference exists between a particular PFAS compound (*e.g.*, PFOS or PFOA) used in AFFF sources and its counterpart in non-AFFF sources. *See* JA18 (alleging the two sources release identical chemicals); JA247–248 (same); JA21 (alleging that PFAS from AFFF "inseparably contributed to any alleged 'non-AFFF' PFAS contamination"); JA250–

251 (same); JA21–24 (alleging that PFAS from the two sources "commingled at various locations across Maryland"); JA250–253 (same for "locations across South Carolina"). The respective PFAS also remain indistinguishable in the environment: PFAS from MilSpec AFFF "overlap" and "commingle[] with the alleged PFAS contamination from non-AFFF sources" in the natural resources at issue in these cases. JA25. Indeed, South Carolina has acknowledged in the AFFF MDL that "PFAS used in AFFF are similar or the same to PFAS used in other applications." Tr. of MDL Status Conf. at 23, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-mn-2873 (D.S.C. Apr. 25, 2024), Dkt. 4906. All of this reveals that neither State can segregate the PFAS contamination allegedly caused by MilSpec AFFF from the PFAS contamination allegedly stemming from other sources.

### 3. A Federal Court Must Decide The Causal Source Of The Alleged PFAS Contamination.

An obvious "connection or association" thus binds Maryland's and South Carolina's purported "non-AFFF" cases and 3M's production of MilSpec AFFF for the U.S. military. *Sawyer*, 860 F.3d at 258. The States seek relief for alleged contamination caused by identical PFAS compounds that have intermingled in the environment from military and non-military origins. Although the States purport to limit their claims to PFAS from non-AFFF sources, they have no accurate means of disentangling these different sources of contamination. Any award of damages or

injunctive relief would thus necessarily sweep in at least some MilSpec AFFF contamination for which 3M has a federal defense.

At a minimum, the States would need to present expert testimony or other evidence—*e.g.*, evidence concerning the movement of PFAS in groundwater—to assist the factfinder in deciding what portion of the contamination at a specific site was caused by MilSpec AFFF. 3M has a right to a federal forum in which to contest the accuracy of that modeling and to argue that recovery at a particular site is barred by its federal government-contractor defense because the State cannot accurately segregate contamination from MilSpec AFFF and other sources of PFAS. Congress provided for federal-officer removal jurisdiction precisely so that "merits questions" that affect the ultimate applicability of the government-contractor defense—as causation does here—will be resolved by a federal court. *Baker*, 962 F.3d at 944 (emphasis omitted); *Cuomo*, 771 F.3d at 116.

The Seventh Circuit's decision in *Baker* is directly on point. There, the plaintiffs sued DuPont and others for allegedly "contaminat[ing] the property" around their residences with lead and arsenic. 962 F.3d at 939. DuPont removed the case to federal court, alleging that it had produced freon for the federal government during World War II, and that this freon production "resulted in waste streams that contained lead and arsenic." *Id.* at 945 n.3. The plaintiffs "purport[ed] to disclaim" damages resulting from DuPont's freon production, *id.*, seeking to

recover instead for lead and arsenic pollution caused by DuPont's commercial activities, *id.* at 945. The court concluded that this self-styled disclaimer was ineffective. Because the plaintiffs sought recovery for lead and arsenic pollution—and because DuPont alleged that its government-contractor freon production had released those chemicals—the suit related to DuPont's contracting activities. *See id.* at 943–45. The factual dispute about the source of the toxins did not counsel against removal—on the contrary, it was "just another example of a difficult causation question that a federal court should be the one to resolve." *Id.* at 945 n.3. Just so here.

## B. Both District Courts Erroneously Failed To Credit 3M's Theory Of The Case.

Both district courts erred in coming to the opposite conclusion. Both courts engaged in a limited, unduly narrow analysis that rejected federal-officer removal on the basis of the States' purported disclaimers. JA226; JA376. Neither court even mentioned—much less assumed the truth of—the detailed factual allegations in 3M's notices of removal that explained why the so-called non-AFFF cases implicate 3M's federal government-contractor defense despite the so-called disclaimers. In fact, rather than accept 3M's theory of the case, as this Court has instructed, the District of Maryland erroneously viewed the facts "in the light most favorable to Plaintiff." JA222. These failures to adhere to the well-settled standard for evaluating federal-officer removal require reversal.

Each district court should have assumed the truth of the plausible factual allegations in 3M's notice of removal—including that PFAS from MilSpec AFFF and other sources is chemically indistinguishable and commingled in the same natural resources—and analyzed removability on that basis. The Supreme Court explained as much in *Dart Cherokee*, where it concluded that a removing defendant need not provide any "[e]vidence" of the facts necessary to establish federal jurisdiction. 574 U.S. at 89. Instead, a "notice of removal need include only a *plausible allegation*" of each such fact. *Id.* (emphasis added).

The ruling in *Dart Cherokee* was based primarily on the text of 28 U.S.C. § 1446(a), the statute governing notices of removal. The provision requires that a notice of removal "'contain[] a short and plain statement of the grounds for removal,'" 574 U.S. at 87, a clear parallel to Federal Rule of Civil Procedure 8(a)'s requirement that a complaint contain a "'short and plain statement'" of the grounds for relief, *id.*; *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (noting parallelism). Rule 8(a) "does not impose a probability requirement at the pleading stage," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and § 1446(a) therefore does not either. Instead, notices of removal must contain only "plausible allegation[s]" of jurisdictional facts. *Dart Cherokee*, 574 U.S. at 89.

The district courts thus erred in failing to "assume the[] veracity" of each notice's "well-pleaded factual allegations" and assess jurisdiction on that basis. *Iqbal*, 556 U.S. at 679; *see Twombly*, 550 U.S. at 555–56. As several other circuits have explained: "[T]he same liberal rules employed in testing the sufficiency of a pleading should apply to appraise the sufficiency of a defendant's notice of removal" under the federal-officer removal statute. *Agyin*, 986 F.3d at 180–81 (citing *Ellenburg*, 519 F.3d at 200); *see Texas v. Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017) ("[T]he standard for federal officer removal tests only the plausibility of the officer's allegations."); *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018) (explaining that "*Dart Cherokee*'s holding is not limited to amount-in-controversy allegations as the district court suggested" and reviewing the allegations in a § 1442(a) removal notice under *Iqbal*'s pleading standard).

In the Maryland case, the district court's main reason for viewing the facts "in the light most favorable to Plaintiff" was that "3M bears the burden of demonstrating that removal is proper." JA222. But viewing the facts in the light most favorable to the plaintiff would "anomalous[ly] . . . treat commencing plaintiffs and removing defendants differently with regard to" jurisdictional facts. *Dart Cherokee*, 574 U.S. at 88. As this Court explained even before *Dart Cherokee*, "'the burden of demonstrating that removal jurisdiction is proper' . . . is no greater than is required to establish federal jurisdiction as alleged in a complaint." *Ellenburg*, 519 F.3d at

200; *see Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (the "facts alleged in" the notice of removal, when "*taken as true*," must be "sufficient . . . to invoke subject matter jurisdiction" (emphasis added)).

At one point, the District of Maryland paid lip service to the idea that it would "construe facts alleged in support of the defendant's colorable federal defense [the third element of the federal-officer removal test] as true." JA225; *see Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 186 (4th Cir. 2017) (listing the elements). But in truth, the district court never grappled with the facts alleged in 3M's notice of removal. And even if it had, the district court should have construed *all* facts plausibly alleged in the notice of removal as true, not only the facts pertaining to the third element.

The District of South Carolina made a similar mistake. There, the district court based its approach on the idea that removal is disfavored and should be "strictly construe[d] . . . because it 'raises federalism concerns.'" JA373 (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Even assuming that principle may be true in other contexts, it does not extend to federal-officer removal. Following the Supreme Court's direction, this Court has instructed that "the federal officer removal statute must be '*liberally construed*'" because the statute protects federal interests by bringing certain cases involving federal officers, and

those acting under them, into federal court. *Arlington Cnty.*, 996 F.3d at 250–51 (emphasis added) (quoting *Watson*, 551 U.S. at 150).

Both district courts relied on a handful of recent decisions remanding "non-AFFF" PFAS cases to state court based on disclaimers similar to the ones that Maryland and South Carolina employed here. JA227; JA373–376. But each of those decisions is currently on appeal. And, more importantly—like the district courts here—those courts failed to defer to the plausible allegations in the notices of removal. They therefore did not grapple meaningfully with whether removal is appropriate where, as a result of commingling of chemically identical PFAS from MilSpec AFFF and other PFAS sources, any verdict for the plaintiff would necessarily rest in part on contamination attributable to MilSpec AFFF. *See Willingham*, 395 U.S. at 407 (federal-officer defenses should be "litigated in the federal courts").

In *New Hampshire v. 3M Co.*, one of the cases on which the district courts relied here, the court gave dispositive weight to the State's disclaimer. 665 F. Supp. 3d 215, 227–29 (D.N.H. 2023). The other decisions largely follow the decision in *New Hampshire* without meaningful independent analysis. *See Maine v. 3M Co.*, 2023 WL 4758816, at *10 (D. Me. July 26, 2023); *Illinois ex rel. Raoul v. 3M Co.*, 2023 WL 6160610, at *5–6 (C.D. Ill. Sept. 21, 2023); *see also* JA373–374. But even if the *State's* theory in *New Hampshire* was that the case had nothing to do with

MilSpec AFFF, 3M plausibly alleged there—just as it has here—that the contamination at issue was caused, in part, by MilSpec AFFF.  As *Baker* and other decisions explain, where the defendant invokes federal-officer removal, federal courts must decide causation questions—including whether there is an accurate means of distinguishing the product produced pursuant to government specifications from other products—because deciding those questions determines whether the defendant may invoke a government-contractor defense.

The Judicial Panel on Multidistrict Litigation denied transfer of the Maryland "non-AFFF" case to the MDL, but that is immaterial for present purposes.  MDL transfer and federal-officer removal are governed by different legal standards.  *Compare* 28 U.S.C. § 1442(a)(1), *with id.* § 1407.  And, in any event, the Judicial Panel noted that transfer of Maryland's "non-AFFF" case may ultimately be warranted if "discovery and pleading practice . . . demonstrate" that this case is "an AFFF case."  JA217, JA219.  In that context, the Judicial Panel was evaluating just the face of Maryland's complaint.  Here, 3M's notice of removal plausibly alleges that Maryland's "non-AFFF" case is, in reality, an AFFF case—which is enough for the case to be removed to federal court.

Ultimately, this Court's "duty is to follow the law as [it] find[s] it, not . . . follow rotely" what "a smattering of lower court opinions" may have done.  *BP*

*P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1541 (2021).  This Court should do so and reverse.

### C. The States' Disclaimers Cannot Sever The Connection To MilSpec AFFF.

This analysis does not change simply because the States purport to disclaim recovery in the "non-AFFF" cases for PFAS contamination stemming from AFFF sources.  Those disclaimers rest on the false premise that the factfinder can separate PFAS contamination from AFFF and non-AFFF sources, which release the same PFAS compounds into the environment.  *See* JA18–19; JA247–248.  The disclaimers cannot absolve the factfinder in each case from having to make an arbitrary judgment, based on expert testimony or other evidence, about what percentage of PFAS contamination at each site traces back to the military.  Because the notices of removal plausibly allege that no such accurate assessment can be made—and thus that any finding of liability would necessarily be premised, in part, on MilSpec AFFF—3M has a federal government-contractor defense in these cases that supports a right to removal.

Moreover, 3M has a right to challenge the accuracy of the States' efforts at trial to distinguish PFAS attributable to MilSpec AFFF from other PFAS sources and to argue that, because there is no accurate means of segregating contamination from the two sources, recovery at a particular site is barred by its federal government-contractor defense.  3M "should have the opportunity to present [its]

version of the facts to a federal, not a state, court," regardless of the States' purported disclaimers. *Willingham*, 395 U.S. at 409.

The Seventh Circuit explained in *Baker*, 962 F.3d 937, why a disclaimer is ineffective in circumstances like these. In *Baker*—the case in which plaintiffs sought recovery for arsenic and lead contamination on their property—the plaintiffs sought to defeat removal by purporting to disclaim that their lawsuit concerned any materials manufactured for the federal government. *Id.* at 945 n.3. The Seventh Circuit rejected that ploy: The disclaimer could not thwart the manufacturers' allegations that they had made the relevant product for the federal government, which "resulted in waste streams that contained lead and arsenic"—"the two main toxins the [plaintiffs] claim[ed] harmed them." *Id.* The Seventh Circuit explained that the plaintiffs could not "have it both ways": Either they disclaimed harms from lead and arsenic of *any* origin and thus negated the manufacturers' opportunity to raise their government-contractor defense; or they sought recovery for those harms, in which case their claims implicated that federal defense and should be resolved in federal court. *Id.* So long as the plaintiffs sought recovery for lead and arsenic, the factfinder would have to determine the "difficult causation question" regarding the source of the alleged contaminants. *Id.* And, as explained, causation issues related to a federal defense "are *merits questions* that a federal court should decide." *Id.* at 944.

The reasoning in *Baker* applies with full force here. As the complaints and notices of removal make clear, the PFAS contamination at issue in each State was likely caused in part by MilSpec AFFF. 3M therefore has a right to a federal forum in which to argue that its federal government-contractor defense bars recovery because there is no accurate means of resolving the "difficult causation question" as to whether contamination at a particular site was attributable to MilSpec AFFF or non-AFFF sources. *Baker*, 962 F.3d at 945 n.3.

*Nessel v. Chemguard, Inc.*, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021), reached the same conclusion in a closely related case against AFFF manufacturers. There, the plaintiffs filed two suits, one seeking recovery for alleged PFAS contamination stemming from non-MilSpec AFFF and one seeking recovery for alleged PFAS contamination stemming from MilSpec AFFF. After the manufacturers removed both cases to federal court, the plaintiffs moved to remand the "non-MilSpec AFFF" suit to state court. The court denied the motion. Given the "substantial similarity" between the complaints, the court reasoned, it was "entirely possible" that some of the plaintiffs' claimed injuries in the non-MilSpec AFFF case were caused by MilSpec AFFF. *Id.* at *3. The court concluded that whichever court "ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished." *Id.*

The *Nessel* court, like the *Baker* court, declined to credit the plaintiffs' would-be disclaimer.  The plaintiffs' "attempt to surgically divide their complaints between Commercial and MilSpec AFFF," the court said, "cannot prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory."  2021 WL 744683, at *3.  Just so here.  The States' fiction cannot prevent 3M from arguing—as plausibly alleged in its notices of removal—that the contamination at issue in these "non-AFFF" cases was caused at least in part by MilSpec AFFF and that it is impossible to accurately segregate the contamination from MilSpec AFFF from the contamination caused by other PFAS sources.  And, if the court agrees with 3M's argument, then the States' claims are barred in whole or in part by 3M's federal government-contractor defense.

Other courts have reached similar conclusions.  *See Curiale v. A. Clemente, Inc.*, 2023 WL 4362722, at *6 (D.N.J. July 5, 2023) ("DuPont is entitled to put forward an alternate theory of causation, and here does so by asserting that the injuries complained of may have resulted from activity DuPont engaged in at the federal government's instruction.  Plaintiff cannot avoid this defense by disclaiming harm resulting from chemicals related to [the government contracts].");  *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *3–5 (D. Del. July 16, 2014) (plaintiff's attempt "at artful pleading to circumvent federal officer removal" failed where

"jurisdictional disclaimer [was] inconsistent with the allegations of the Complaint" and the removal notice).

This Court has likewise said that a complaint's disclaimer must be consistent with the relief requested and the theory of the defense. In *Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), this Court concluded that a disclaimer (of any damages from exposure to valves, as opposed to exposure to gaskets) had "real effect" because it "expressly disclaimed any damages" arising out of a particular product. *Id.* at 321. The defendant agreed that the valves—the only basis for any federal defense—"d[id] not contain asbestos," while the gaskets did. *See* Opening Br. at 7 n.1, *Wood*, No. 13-1868 (4th Cir. Sept. 9, 2013). In reaching its conclusion, *Wood* distinguished a case in which the plaintiff "still sought damages arising out of his exposure to" the product that implicated federal jurisdiction, "[d]espite his disclaimer" otherwise. 764 F.3d at 321 (quoting *Brantley v. Borg-Warner Morse Tec, Inc.*, 2012 WL 1571129, at *2 (S.D. Cal. May 3, 2012)) (alterations omitted). In these cases, as explained, 3M has plausibly alleged that, despite the States' disclaimers, both States are seeking to recover for alleged contamination that may include PFAS compounds traceable to MilSpec AFFF that have commingled in the environment with, and that are inseparable from, PFAS compounds from non-AFFF sources.

Even assuming the States could apportion damages between PFAS attributable to AFFF and non-AFFF sources, which they cannot, removal would be proper:  Both States seek injunctive relief that cannot be apportioned.  Maryland is seeking a court order directing 3M "to abate or mitigate . . . PFAS contamination," JA119, and South Carolina seeks similar equitable relief, JA313.  Where PFAS from MilSpec AFFF is commingled with PFAS from other sources, it is both conceptually and practically impossible for 3M to remove only PFAS contamination resulting from non-AFFF sources.  *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (noting "the indivisible nature of the injunctive . . . remedy").  Any such relief would necessarily require 3M to abate alleged contamination resulting from production of MilSpec AFFF.

In reality, then, the States have *not* disclaimed relief for harms from AFFF *at all*.  Instead, the States are trying to have their cake and eat it too, splitting their claims to try to avoid federal jurisdiction over these "non-AFFF" cases while simultaneously seeking to recover in these cases for the same alleged harms to the same natural resources as in their "AFFF" lawsuits.  The States' alleged disclaimers—made when the States are pursuing the exact damages and equitable remedies they purport to disclaim, given the commingling of PFAS from various sources—do not bar federal-officer removal of these cases.  *Cf. Federated Dep't*

*Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (courts "will not permit plaintiff to use artful pleading to close off [a] defendant's right to a federal forum").

If both the "AFFF" cases (which have been removed) and "non-AFFF" cases (which have been remanded) were pending in federal court, then 3M could move to consolidate them to thwart the States' improper efforts to split their claims. But if the "non-AFFF" and "AFFF" cases proceed in separate state and federal forums, then 3M faces a significant risk of inconsistent judgments. Even if each factfinder can and does make an effort to separate contamination from AFFF and non-AFFF sources, the "non-AFFF" suits might easily generate liability for—and injunctive relief to abate contamination stemming from—3M's sales of MilSpec AFFF. Principles of preclusion, which bar a plaintiff from "advanc[ing] the same claim as an earlier suit" brought against the same defendant, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020), might mitigate that risk of inconsistent judgments. Whichever party prevails in the case that first reaches judgment might assert that judgment as a bar to the State's second suit or to particular issues (like the government-contractor defense) in those cases. But the fact that the States or 3M might assert preclusion because the same claim was litigated in the earlier suit just reinforces the point: If each State's "non-AFFF" and "AFFF" cases are about the *same claim*, then their "non-AFFF" cases "relat[e] to" 3M's production

of MilSpec AFFF just as their "AFFF" cases indisputably do. That satisfies the federal-officer removal statute's "for or relating to" requirement.

Because of the risk of inconsistent judgments, this Court has warned against the dangers of "a plaintiff . . . prosecuting its case piecemeal." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015). "The rule against claim splitting" therefore "requires that all claims arising out of a single wrong be presented in one action." *Id.*; *see Stark v. Starr*, 94 U.S. 477, 485 (1876) ("It is undoubtedly a settled principle that a party . . . is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail."). This Court should not permit the States to avoid federal-officer removal by artificially splitting their claims between state and federal court—a separation that will be impossible to maintain in practice.

Contrary to the allegations in the notices of removal, the States may contend that it is possible, as a factual matter, to separate contamination caused by PFAS from AFFF sources from contamination caused by PFAS from non-AFFF sources. That factual disagreement may present "a difficult causation question" at trial (if the State's causation model is sufficiently reliable to reach a jury). *Baker*, 962 F.3d at 945 n.3. But "the propriety of removal does not depend on the answer[]" to that question. *Id.* at 947. At this stage of the litigation, the court must liberally construe

the removal provision *and* "credit [3M's] theory of the case." *Arlington Cnty.*, 996

F.3d at 251, 256. Under that theory, these "non-AFFF" actions are inseparably

related to 3M's production of AFFF for the U.S. military and, if they result in

verdicts against 3M, will necessarily impose liability, in part, based on its actions as

a federal contractor. These suits thus relate to 3M's actions taken pursuant to official

authority.[2]

## III.   3M Asserted A Colorable Federal Defense.

Finally, a private defendant seeking removal under § 1442(a)(1) must

demonstrate "a colorable federal defense." *Sawyer*, 860 F.3d at 254. "Courts have

imposed few limitations on what qualifies as a colorable federal defense." *Arlington*

---

[2] South Carolina filed an affidavit with its remand motion from a scientist in its Department of Health and Environmental Control. *See* JA367–371 (affidavit of Scott Reynolds). The affidavit asserts that it is "possible to identify" certain "areas which are more probably than not contaminated by the use of AFFF products" rather than PFAS from non-AFFF products. JA370. Below, South Carolina argued that this affidavit somehow "directly refute[s]" 3M's theory of the case, Mem. in Supp. of Mot. to Remand at 13, *South Carolina*, No. 2:23-cv-05979, preventing 3M from "proving . . . jurisdiction," *id.* at 8. That is incorrect. That it *might* be possible to discern whether some sites more likely have PFAS from MilSpec AFFF or from non-AFFF products does not matter at this stage. 3M's notice of removal plausibly explains that at least some of the sites for which the State seeks recovery have alleged PFAS contamination from both sources that is indistinguishably commingled. Even if the affidavit were relevant at this stage, which it is not, nothing in the affidavit contradicts that. In any event, 3M's plausible allegations in the notice of removal are controlling for purposes of removal. Determining whether there is an accurate model for distinguishing between contamination from MilSpec AFFF and other sources of PFAS is a *merits* question that a federal court must decide, given this case's connection to MilSpec AFFF. *Baker*, 962 F.3d at 944. In short, the affidavit does not change the jurisdictional analysis.

*Cnty.*, 996 F.3d at 254. The defendant need not "'win his case before he can have it removed' nor even establish that the defense is 'clearly sustainable.'" *Ripley*, 841 F.3d at 210 (quoting *Willingham*, 395 U.S. at 407). Rather, the defendant need only raise a "plausible" "defensive" claim that is "based in federal law." *Arlington Cnty.*, 996 F.3d at 254. "[A] federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 37 (1st Cir. 2022).

In both "non-AFFF" cases, 3M has invoked the government-contractor defense, which provides that government contractors are not subject to state tort liability when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

3M's notices of removal plausibly allege all three elements of this defense. *First*, the federal government developed and used "reasonably precise specifications" for the formulation, performance, and testing of MilSpec AFFF. JA28–30; JA258–259. *Second*, the Naval Sea Systems Command determined that 3M's AFFF products conformed to those specifications, as demonstrated by 3M's inclusion on the "Qualified Products List." JA30; JA259. *Third*, 3M was not aware of any material risk regarding MilSpec AFFF about which the federal government

did not know. JA30–33; JA260–263. The federal government has long understood—and publicly acknowledged—that AFFF contains PFAS, that AFFF constituents may migrate to groundwater, and that some studies suggest potential adverse effects from PFAS. *See, e.g.*, Edward S.K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980) (report supported by Department of Defense stating that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally"); EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 6 (Nov. 4, 2002) (study assessing "health and environmental issues presented by fluorochemicals"). Drawing all reasonable inferences in 3M's favor, as is required at this stage, 3M has asserted a colorable government-contractor defense.

This should come as no surprise. The States raised no objection to removal of their "AFFF" suits based on 3M's plausible government-contractor defense. And the MDL court has explained that the government-contractor defense is available for claims against 3M relating to MilSpec AFFF. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, *15 (D.S.C. Sept. 16, 2022). Because

3M has plausibly alleged that these "non-AFFF" cases relate to MilSpec AFFF too, the same conclusion follows here.[3]

In the Maryland case, the district court concluded otherwise, again relying on the State's disclaimer. (The District of South Carolina did not address this issue.) The court reasoned that, "[b]y excluding MilSpec AFFF and all other types of AFFF from its Complaint, the State has abandoned any claims in this case that would allow 3M to utilize the government contractor defense." JA227. This was error for the same reasons explained above. As a result of the commingling of MilSpec AFFF and non-AFFF PFAS in the environment, these "non-AFFF" suits are inextricably intertwined with 3M's production of MilSpec AFFF, and thus, despite the States' purported disclaimers, they will necessarily implicate 3M's well-pleaded government-contractor defense. *Supra* II.

---

[3] In their motions to remand filed in the district court, both States argued that 3M's notices of removal did not satisfy the third element of the government-contractor defense because, they said, 3M failed to allege that it warned the United States about the dangers of AFFF. Mem. in Supp. of Mot. for Recons. and Remand at 22–23, *Maryland*, No. 1:23-cv-01836; Mem. in Supp. of Mot. to Remand at 10–11, *South Carolina*, No. 2:23-cv-05979. Neither district court reached this argument, but it fails at this stage. As explained above, 3M's notices of removal plausibly allege that the government already knew about the risks of AFFF. JA30–33; JA260–263. And the MDL court has concluded, in a related case, that there is a jury question on this issue that must be resolved at trial. *See Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12. In addition, the States' failures to object to removal of their "AFFF" cases belie any real argument on this score.

Under § 1442(a)(1), 3M has the right to have its plausible government-contractor defense "litigated in the federal courts." *Willingham*, 395 U.S. at 407. The concern animating federal-officer removal—"to protect federal officers from interference by hostile state courts," *id.* at 405—applies with particular force in the context of military procurement. "[G]iven the complexities of military decision making and the constitutional delegation of the war powers to the legislative and executive branches," the federal government enjoys broad discretion "in matters of military procurement contracts." *Ripley*, 841 F.3d at 210. The judiciary therefore "hesitate[s] to intervene" at all in such issues. *Id.*; *see also Tozer v. LTV Corp.*, 792 F.2d 403, 405 (4th Cir. 1986) (similar). But if a court must intervene, it should be a *federal* court—not a state court—that does so.

Congress enacted § 1442(a)(1) to ensure that federal contractors have access to a federal forum in which to litigate their federal defenses. Particularly given the Supreme Court's direction to construe that provision liberally, 3M's notices of removal plausibly allege that these "non-AFFF" cases relate to its production of MilSpec AFFF and thereby implicate its government-contractor defense. The district courts therefore have jurisdiction under the federal-officer removal statute.

## CONCLUSION

For these reasons, 3M respectfully requests that the Court reverse the district courts' orders granting the States' motions to remand.

Dated:  June 7, 2024                              Respectfully submitted,


      */s/  Lauren R. Goldman*

Amir C. Tayrani                                   Lauren R. Goldman
Katherine Moran Meeks                             GIBSON, DUNN & CRUTCHER LLP
Zachary Tyree                                     200 Park Avenue
GIBSON, DUNN & CRUTCHER LLP                        New York, NY 10166
1050 Connecticut Avenue NW                         (212) 351-2375
Washington, DC 20036                               lgoldman@gibsondunn.com
(202) 955-8500
atayrani@gibsondunn.com
kmeeks@gibsondunn.com
ztyree@gibsondunn.com

*Counsel for 3M Company*

## STATEMENT REGARDING ORAL ARGUMENT

3M respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Local Rule 34(a).  This case presents complex and important questions of federal procedure, and 3M submits that oral argument would afford the parties and the Court an opportunity to explore these issues more fully.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14-point font). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 10,769 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

June 7, 2024                              Respectfully submitted,


                                         */s/ Lauren R. Goldman*
                                         Lauren R. Goldman
                                         GIBSON, DUNN & CRUTCHER LLP
                                         200 Park Avenue
                                         New York, NY 10166
                                         (212) 351-2375
                                         lgoldman@gibsondunn.com

# CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, I caused a copy of the foregoing brief

and the joint appendix to be served via ECF on all counsel of record.

_/s/ Lauren R. Goldman_

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com