October 23, 2024

**VIA ECF**

Nwamaka Anowi
Clerk of Court
U.S. Court of Appeals for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, VA 23219

   Re: *State of Maryland v. 3M Company*, No. 24-1218*; State of South Carolina*
     *v. 3M Company*, No. 24-1270

Dear Ms. Anowi:

   The First Circuit's recent decision in *Puerto Rico v. Express Scripts, Inc.*, Nos. 23-1612-1613 (1st Cir. Oct. 18, 2024) (attached), supports reversal here.

   In *Express Scripts*, the Commonwealth sued Caremark for alleged insulin price inflation based on the company's rebate negotiations with private clients, while expressly disclaiming "relief relating to any federal program." Op.9. Caremark removed on federal-officer grounds, alleging in its removal notice that its handling of private and federal benefits were intertwined. Op.12-13, 30. The First Circuit reversed the district court's remand order, holding that the defendant's allegations and "theory of the case" must be credited, Op.27, and the plaintiff's disclaimer "cannot serve as an end run around the federal officer removal statute," Op.5.

   *Express Scripts* clarifies three important principles that are decisive here. *First*, a plaintiff's "disclaimer" cannot defeat federal officer removal where federal and non-federal activities are intertwined. Op.30-33. That is particularly true when there is little difference between what the plaintiff disclaims and what the federal-contractor defense protects. Such "circular" disclaimers would impermissibly substitute state-court litigation over the disclaimer's scope for federal-court litigation over the scope of the federal defense. Op.23-24. *Second*, to be effective, a disclaimer must entirely foreclose the need for *any* apportionment of federal and non-federal conduct, which is far easier in cases involving single-site injuries rather than broader impacts. Op.22, 35-36 (distinguishing *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024)). *Third*, the removing defendant's allegations and its "theory of the case" "'must be credit[ed],'" especially concerning the "indivisibility" of federal and non-federal conduct. Op.27-28, 34.

   Together these principles mandate reversal here. 3M's allegations that AFFF and non-AFFF PFAS are inextricably intertwined must be credited. And Appellees have refused to limit their suit to a specific site, let alone make the kind of not-even-a-morsel disclaimer as in *Raoul*. Dkt.53. Appellees cannot deprive 3M of a federal-court forum to determine the extent to which PFAS can be traced to AFFF by substituting state-court

litigation over the scope of their disclaimer for federal-court litigation over the scope of 3M's federal defenses.  These cases belong in federal court.

Respectfully,

s/Paul D. Clement
Paul D. Clement

*Counsel for Defendants-Appellants*

Cc:  All Counsel of Record

# ATTACHMENT

# United States Court of Appeals
## For the First Circuit

No. 23-1612
No. 23-1613

GOVERNMENT OF PUERTO RICO,

Plaintiff, Appellee,

v.

EXPRESS SCRIPTS, INC.; CAREMARKPCS HEALTH, LLC; and CAREMARK
PUERTO RICO, LLC,

Defendants, Appellants,

ELI LILLY AND COMPANY; ELI LILLY EXPORT S.A.; NOVO NORDISK INC.;
SANOFI-AVENTIS U.S., LLC; SANOFI-AVENTIS PUERTO RICO INC.; and
OPTUMRX, INC.;

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

Jason R. Scherr, with whom Stephanie Schuster, Patrick A.
Harvey, Lindsey T. Levy, Morgan, Lewis & Bockius LLP, Carlos A.
Valldejuly-Sastre, Ricardo J. Casellas-Santana, and O'Neill &
Borges LLC, were on brief, for appellant Express Scripts, Inc.

A. Joshua Podoll, with whom Enu Mainigi, Craig Singer,
Williams & Connolly LLP, Eduardo A. Zayas-Marxuach, and McConnell
Valdés LLC were on brief, for appellants CaremarkPCS Health, LLC,
and Caremark Puerto Rico, LLC.

Louis Bograd, with whom Motley Rice LLC, Andrés W. López, and The Law Offices of Andrés W. López, P.S.C., were on brief for appellee.

———————————

October 18, 2024

———————————

GELPÍ, **Circuit Judge**.  This appeal is about 28 U.S.C. § 1442 -- the "federal officer removal statute."  This statute allows private actors to remove a lawsuit against them to federal court if they demonstrate that (1) they acted under a federal officer's authority, (2) they carried out the charged conduct in relation to the asserted official authority, and (3) they possess a colorable, federal defense against the charged conduct. § 1442(a)(1); see Moore v. Elec. Boat Corp., 25 F.4th 30, 34 (1st Cir. 2022).

The Government of Puerto Rico ("the Commonwealth") sued pharmaceutical benefit managers ("PBMs") including Express Scripts, Inc. ("Express Scripts"), CaremarkPCS Health, LLC, and Caremark Puerto Rico, LLC, ("Caremark," together with Express Scripts, "PBM Defendants"), and several pharmaceutical manufacturers[1] in the Commonwealth of Puerto Rico Court of First Instance ("Court of First Instance").  The Commonwealth alleges that the PBM Defendants schemed to unlawfully inflate insulin prices through rebate negotiations and price setting.  The PBM Defendants removed to federal court under § 1442(a)(1).  They argue that they served the federal government in negotiating rebates with pharmaceutical manufacturers and setting prices for drugs and that the Commonwealth's lawsuit relates to their federal service.

---

[1] These manufacturers are not parties to this appeal.

But the Commonwealth's complaint claimed not to seek relief related to the PBM Defendants' federal service. Indeed, it purported to disclaim all "relief relating to" a federal program or contract. So, the Commonwealth argues that disclaimer excluded any claims upon which Express Scripts and Caremark might remove under § 1442(a)(1). The district court agreed with that argument and remanded to the Court of First Instance.

This appeal presents a novel issue in our circuit. So far, the courts to consider the issue as it relates to these PBM Defendants have reached different conclusions. Compare California v. CaremarkPCS Health LLC, No. 23-55597, 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024) (mem.) (concluding that, in a dispute between California and these PBM Defendants concerning similar conduct, a similar disclaimer did "not necessarily defeat removal"), and Hawai'i ex rel. Lopez v. CaremarkPCS Health, LLC, No. 23-464, 2024 WL 1907396, at *6-14 (D. Haw. May 1, 2024) (concluding that Hawai'i's disclaimer did not prevent Caremark from satisfying § 1442(a)(1)), with West Virginia ex rel. McCuskey v. Eli Lilly & Co., No. 5:24-cv-143, 2024 U.S. Dist. LEXIS 160669, at *11-25 (N.D. W. Va. Sept. 6, 2024) (concluding, in part, that West Virginia's disclaimer successfully excluded claims upon which Caremark could base removal). It was thus entirely reasonable for the district court here to fall on the side it did of this nationally debated issue.

Ultimately, we chart a different analytical course than the district court, based upon our reading of the federal officer removal statute and the relevant jurisprudence. For we recognize that we must credit Caremark's allegation that it performed the challenged conduct jointly for private parties and for the federal government. And if Caremark can properly remove on this basis, then the entire action belongs in federal court. Despite what the disclaimer says, it does not foreclose Caremark's assertion that it performed this indivisible conduct under a federal officer's authority and are so entitled to colorable federal defenses. To credit the disclaimer would permit the Commonwealth to recover based on what, when considered through Caremark's theory of removal, were acts under a federal officer. The Commonwealth's attempts at artful pleading cannot serve as an end run around the federal officer removal statute. Accordingly, we reverse and remand.

## I. BACKGROUND

To set the stage, we outline the pharmaceutical industry, recount the proceedings below, and, along the way, summarize the parties' allegations.

### A. Pharmaceutical Industry Basics

There are a few key players in the pharmaceutical industry. There are pharmaceutical manufacturers, who research, develop, and sell prescription drugs at a certain list price. Of

course, there are the individuals who pay either cash to the pharmacy for prescription drugs or premiums to cover their prescription drug co-pay. Those premiums go to carriers, such as an employer-sponsored health plan or an insurance company, that provide health insurance. And then there are PBMs, like Caremark and Express Scripts. Think of PBMs as "middlemen" between health care plans, pharmacies, and pharmaceutical manufacturers. They contract with health plans and carriers to administer prescription drug benefits, manage drug costs, and negotiate rebates and discounts from pharmaceutical manufacturers.

As relevant here, PBMs create drug formularies -- lists of prescription drugs that health plans cover and to which PBMs designate tiers according to how much consumers owe for a co-payment. For example, a tier-1 drug would require a $5 co-payment, while a tier-2 drug would require a $10 co-payment, and so on. Drugs excluded from a PBM's formulary must be purchased out-of-pocket by consumers, making them a less desirable option in the marketplace.

Manufacturers accordingly work to ensure that PBMs include their drugs on formularies. Among other incentives, manufacturers pay rebates -- post-sale discounts calculated based on how many consumers fill a prescription for the manufacturers' drug -- and other fees to PBMs, which in turn keep a portion of the rebates and fees before passing off the remainder to health

insurance plans.  Rebates coax PBMs to place drugs on their drug formularies in a preferred tier with a lower cost-share amount, making a drug more attractive for consumers.  The rebate amount is typically a percentage of the wholesale acquisition cost ("WAC"): the list price for wholesalers and direct purchasers, as established by prescription drug manufacturers.  See 42 U.S.C. § 1395w-3a(c)(6)(B).  The PBM Defendants claim that this structure allows PBMs to negotiate for and achieve lower prices on prescription drugs for their clients.

### B. Procedural History

#### i. Initial Lawsuit

The Commonwealth sued in the Court of First Instance on January 17, 2023.  Its four claims under the Puerto Rican Fair Competition Act, P.R. Laws Ann. tit. 10, § 259 (2023), center on the PBM Defendants' alleged deceptive and unlawful activity concerning how they sell and market drugs.  According to the Commonwealth, the PBM Defendants misrepresented that their business model reduces prescription drug costs.  Rather than lowering costs, the Commonwealth alleges, the PBM Defendants schemed to inflate the WAC from 2014 until present, lining their pockets with more profits and depriving Commonwealth residents of affordable insulin and other drugs.  Since, over that time period, neither manufacturing nor distribution costs justify the creeping

increase in drug prices, the Commonwealth faults the PBM Defendants.

Central to the Commonwealth's claims are the PBM Defendants' rebate negotiations. The Commonwealth alleges that, since 2014, the PBM Defendants excluded certain drugs from their formularies to increase competition and encourage drug companies to offer higher rebates. The Commonwealth, in other words, accuses the PBM Defendants of effectively using their leverage as formulary holders to "sell" that "formulary space to the highest bidding drug company." To keep up with the rising costs of formulary space, drug manufacturers in turn had to increase the WAC price. Those increased costs, the Commonwealth asserts, were then passed on to the consumers: Because "[m]any consumers' out-of-pocket payments for insulin are tied to the WAC price, . . . consumers' out-of-pocket payments increase when the WAC price increases." And as a result of the jockeying and negotiating between PBMs and pharmaceutical manufacturers, consumers who use insulin are forced to switch medications every few years.

At bottom, the Commonwealth alleges that, despite the PBM Defendants' claims that their rebate practices are helping consumers, the PBM Defendants are in fact focused on something else: receiving a higher rebate for themselves. Indeed, the Commonwealth asserts, the PBM Defendants often choose to include on their formularies the drugs for which they received the highest

rebate,       excluding        otherwise        identical -- and       more
cost-effective -- drugs.

The Commonwealth seeks to enjoin the PBM Defendants from
engaging in any future unfair and deceptive practices related to
this alleged scheme.  The Commonwealth also seeks restitution,
payable to any Commonwealth resident consumer affected by those
practices, along with damages to the Commonwealth in the amount
resulting from increased insulin prices from the scheme.

Crucial   to   the   instant   appeal   is   the   following
disclaimer, which the Commonwealth included in its complaint:

> The  [Commonwealth]  is  not  seeking  relief
> relating   to   any   federal   program   (e.g.,
> Medicaid, Medicare) or any contract related to
> a    federal    program.    Moreover,    the
> [Commonwealth's] claims do not arise out of a
> written contract, but rather are based on the
> larger  unfair  and  deceptive  scheme  that
> violates   the   Fair   Competition   Act   and
> increased prices and reduced access to insulin
> products   for   Puerto   Rico   consumers.

On  March  17,  2023,  the  PBM  Defendants  removed  under
§ 1442(a)(1) to federal court.  They each raised separate removal
theories below.  However, the statute "authorizes removal of the
entire  action  even  if  only  one  of  the  controversies  it  raises
involves  a  federal  officer  or  agency."  <u>Moore</u>, 25 F.4th at 35
(quoting Charles Alan Wright & Arthur R. Miller, <u>Federal Practice
and Procedure</u> § 3726 (4th ed. 2021)).  So, if either Caremark or
Express  Scripts  may  remove,  "the  entire  case  will  be  deemed

removable, such that [the Commonwealth's] claims against all other defendants . . . will be heard in federal court as well." Morgan v. Huntington Ingalls, Inc., 879 F.3d 602, 606 (5th Cir. 2018); see Moore, 25 F.4th at 35; Baker v. Atl. Richfield Co., 962 F.3d 937, 945 (7th Cir. 2020). As we explain in detail below, we find Caremark's arguments persuasive. Because this suffices to establish federal officer removal, we therefore limit our discussion and analysis to Caremark's theory of removal.

### ii. Caremark

Caremark premises removal on its obligations to carriers that provide health-insurance benefits to federal government employees through the Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. §§ 8901-8914. "FEHBA 'establishes a comprehensive program of health insurance for federal employees' and family members covered under their plans." López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1, 3 (1st Cir. 2014) (quoting Empire HealthChoice Assur., Inc. v. McVeigh, 547 U.S. 677, 682 (2006)). Congress assigned to the Office of Personnel Management ("OPM") "broad administrative and rulemaking authority over" the FEHBA program, including authorizing OPM to contract with private carriers for federal employees' health insurance. Coventry Health Care of Mo., Inc. v. Nevils, 581 U.S. 87, 91 (2017). OPM's contracts with private carriers "shall contain a detailed statement of benefits offered and shall include such maximums,

limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable." 5 U.S.C. § 8902(d).

"OPM has direct and extensive control over these benefits contracts under the FEHBA." <u>Goncalves ex rel. Goncalves</u> v. <u>Rady Children's Hosp. San Diego</u>, 865 F.3d 1237, 1246 (9th Cir. 2017) (citation omitted). And OPM's standard form contracts assume that PBMs will contract with FEHBA carriers and receive rebates. Off. Of Pers. Mgmt., <u>Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers</u> I-18-I-20 (2019) ("<u>FEHB Standard Contract</u>"), https://perma.cc/7EX7-26DB (last visited Sept. 26, 2024). OPM thus requires FEHBA carriers to impose certain provisions in their contracts with PBMs concerning rebates, and PBMs must adhere to these provisions.[2] <u>Id.</u> These include:

- submitting quarterly and annual reports concerning negotiated rebates;

---

[2] We acknowledge that Caremark did not directly contract with OPM. None of the parties have suggested that this should impact our analysis of federal officer removal, so the issue is not squarely before us. We pause to note that "the absence of a direct contractual relationship with the federal government is not a bar to removing an action under § 1442(a)(1)." <u>Cnty. Bd. of Arlington Cnty.</u> v. <u>Express Scripts Pharmacy, Inc.</u>, 996 F.3d 243, 254 (4th Cir. 2021) (emphasis omitted) (concluding that TRICARE subcontractors were acting under federal authority because the Department of Defense's contracts with Express Scripts expressly contemplated the use of subcontractors, the subcontractors were directly accountable to the Department, and the subcontractors assisted the Department in fulfilling its governmental task).

- using "pass-through transparent pricing based on the PBM's cost for drugs . . . in which the [FEHBA] Carrier receives the value of the PBM's negotiated . . . rebates";

- crediting carriers "either as a price reduction or by cash refund the value all [rebates] properly allocated to the Carrier"; and

- providing OPM with certain information upon request -- such as the PBM's contracts with pharmacies, manufacturers, and third parties concerning the sales of claims data.

Id. at I-17-I-19.

Caremark removed because it claims that the Commonwealth's lawsuit challenges its performance for FEHBA plans under the FEHBA benefits contracts. Caremark reasons that the Commonwealth, by seeking to recover for every Commonwealth resident who purchased insulin at inflated prices, necessarily seeks to recover for its residents who are federal employees who receive benefits through FEHBA. That is, Commonwealth residents who are federal employees bought insulin using health care benefits from FEHBA carriers, and Caremark collected manufacturer payments -- subject to the contractual obligations listed above.

Caremark also points out that it does not distinguish between FEHBA and non-FEHBA clients during negotiations with manufacturers for rebates -- the rebates were, and still are, negotiated on behalf of all clients. These joint negotiations have led to "rebate agreements" between Caremark and the manufacturer. Caremark reiterates that, from 2014 to the present,

it did not negotiate separate rebate agreements for its FEHBA and non-FEHBA clients. And during that time period, the same agreements governed rebates for insulin paid by manufacturers for both FEHBA plans and non-FEHBA plans. So whatever rebates Caremark received were not separated on a plan-by-plan basis.

Accordingly, because the Commonwealth's complaint sought relief for Commonwealth residents arising from Caremark's actions and rebate negotiations on behalf of FEHBA plans, Caremark invokes § 1442(a)(1). In its notice of removal, Caremark claims that it negotiated for rebates under FEHBA's statutory regime. Thus, it insists, the lawsuit necessarily implicated its practices under FEHBA contracts, which would permit it to assert a colorable preemption defense. And, according to Caremark, the Commonwealth's disclaimer does not preclude removal. That was because it was either impossible to sever what the Commonwealth's residents paid between Caremark's negotiations for FEHBA versus non-FEHBA plans or at least premature to speculate on whether the Commonwealth's injury could be divided this way. In other words, the disclaimer does not foreclose the possibility that the Commonwealth would seek to recover for Caremark's actions to assist the federal government with administering FEHBA.

### iii. Removal Proceedings

The Commonwealth moved to remand. It argued that its disclaimer eliminates any "legal basis for federal officer

removal" and clarified that it would "categorically exclude[]" relief "relating to" FEHBA.

The district court remanded based on that disclaimer. The district court deduced that, because the Commonwealth's disclaimer limits its potential recovery to harms stemming from the PBM Defendants' actions for non-federal programs and contracts, the PBM Defendants cannot claim that they acted under a federal officer's authority for their non-federal PBM services. It, furthermore, rejected the PBM Defendants' indivisibility arguments "because relief would be strictly limited to non-federal health insurance plans." And it cautioned that accepting the PBM Defendants' argument would mean that parties that work on behalf of private and federal entities could remove even if their federal work were not at issue. Furthermore, the district court was "not persuaded that dividing the work done by [the PBM] Defendants on behalf of the federal government from the work done for its private clients [was] not possible in this case."

PBM Defendants appealed.[3] We have jurisdiction under 28 U.S.C. § 1447(d).

---

[3] On August 29, 2023, we denied Caremark's emergency motion to stay the district court's remand order pending appeal and Express Script's motion to recall the remand pending appeal. See Order, Gov't of P.R. v. Express Scripts, Inc., No. 23-1612 (1st Cir. Aug. 29, 2023).

## II. DISCUSSION

### A. Standard of Review

"We review de novo the district court's jurisdictional determination on removal. Where the district court resolves disputed issues of fact, we review those factual findings for clear error." Moore, 25 F.4th at 34 (citations omitted). In reviewing a ruling on a motion to remand, we ask "whether federal jurisdiction exist[ed]" as "cabined by the notice of removal." López-Muñoz, 754 F.3d at 4 (first citing BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 830 (1st Cir. 1997); and then citing Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1012 n.4 (11th Cir. 2003)). Accordingly, the removing parties bear the burden of showing federal officer jurisdiction as pleaded in their notice of removal. See Moore, 25 F.4th at 34; Ervast, 346 F.3d at 1012 n.4. In reviewing whether the removing party met its burden, Courts must "credit" that party's "theory of the case" for why removal under § 1442(a)(1) was appropriate. Jefferson Cnty. V. Acker, 527 U.S. 423, 432 (1999); see Agyin v. Razmzan, 986 F.3d 168, 175 (2d Cir. 2021).

**B. Federal Officer Removal Statute**

**i. Statutory Background**

Section 1442(a)(1) permits a "person"[4] to remove "[a] civil action . . . commenced in a State[5] court . . . that is against" that person if that person is an "officer (or any person acting under that officer) of the United States or of any agency thereof" and is sued "in an official or individual capacity, for or relating to any act under color of such office." § 1442(a)(1) (footnote added). Congress passed and refined the statute over time to shield the federal government and those assisting it from state interference "that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting . . . within the scope of their authority.'" Watson v. Philip Morris Cos., 551 U.S. 142, 150 (2007) (alterations in original) (quoting Willingham v. Morgan, 395 U.S. 402, 406 (1969)); Willingham, 395 U.S. at 405 ("Obviously, the removal provision was an attempt to protect federal officers from interference by hostile state courts.").

---

[4] A "person" includes a corporation and a limited liability company, such as Express Scripts and Caremark. Goncalves, 865 F.3d at 1244.

[5] Section 1442(a)(1) permits removal from the Court of First Instance. See 48 U.S.C. § 864; Camacho v. Autoridad de Teléfonos de P.R., 868 F.2d 482, 486 n.4 (1st Cir. 1989).

Section 1442(a)(1) thus "represent[s] a legislatively-spawned value judgment that a federal forum should be available when particular litigation implicates a cognizable federal interest." Camacho, 868 F.2d at 487. And it must be "liberally construed to give full effect" to this purpose, Colorado v. Symes, 286 U.S. 510, 517 (1932), that is, "to ensure a federal forum in any case where a federal official" or private actors acting on that official's behalf may "raise a defense arising out of his official duties," Arizona v. Manypenny, 451 U.S. 232, 241 (1981) (emphasis added). Accordingly, "the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" Id. at 242 (quoting Willingham, 395 U.S. at 407).

As we mentioned above, if a single defendant properly removes under § 1442, the entire action, with all defendants, must be removed to federal court. See, e.g., Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co., 644 F.2d 1310, 1315 (9th Cir. 1981) (declining to consider whether all defendants joined in removal petition where federal officer was entitled to remove the entire action); Wisconsin v. Schaffer, 565 F.2d 961, 964 (7th Cir. 1977) (acknowledging that "when an action is pending in a state court against a number of defendants, only one of whom is a federal officer, sued on account of an official act, removal at the instance of the federal officer removes the entire action with all

defendants"); <u>Iowa Pub. Serv. Co.</u> v. <u>Iowa State Com. Comm'n</u>, 407 F.2d 916, 918 n.3 (8th Cir. 1969) (noting the same); <u>Allman</u> v. <u>Hanley</u>, 302 F.2d 559, 562 (5th Cir. 1962) (explaining that entire case was removed "as to all parties" where Army officials were entitled to remove under § 1442(a)); <u>Bradford</u> v. <u>Harding</u>, 284 F.2d 307, 310 (2d Cir. 1960) (explaining policy reasons for allowing one federal officer defendant to remove regardless of whether co-defendants consent).

### ii. Three-Part Test

To avail itself of § 1442(a)(1), a removing party must establish three elements: (1) "that it was acting under a federal officer's authority," (2) "that the charged conduct was carried out for or relating to the asserted official authority," and (3) "that it will assert a colorable federal defense to the suit." <u>Moore</u>, 25 F.4th at 34 (internal quotation marks and citations omitted).

"The words 'acting under' are broad," and, like the rest of the statute, "must be 'liberally construed.'" <u>Watson</u>, 551 U.S. at 147 (quoting <u>Symes</u>, 286 U.S. at 517). "'[A]cting under' a federal officer . . . contemplate[s] a relationship where the private party engages in an effort 'to <u>assist</u>, or to help <u>carry out</u>, the duties or tasks of the federal superior'" and "typically involves 'subjection, guidance, or control.'" <u>Moore</u>, 25 F.4th at 34 n.3 (quoting <u>Watson</u>, 551 U.S. at 151-52). For example, a

private contractor that "help[s] the Government to produce an item it needs" and thus "helps officers fulfill other basic governmental tasks" may remove because it assists with a governmental function that the government "itself would have had to perform." Watson, 551 U.S. at 153-54; see Papp v. Fore-Kast Sales Co., 842 F.3d 805, 812-13 (3d Cir. 2016). On the other hand, a private entity that merely complies with federal regulations does not act under a federal officer's authority because "simple compliance with the law" does not assist the government in the same way. Watson, 551 U.S. at 153.

The defendant must also carry out the charged conduct "'for or relating to' the asserted official authority." Moore, 25 F.4th at 34. "Relating to," as it is used in § 1442(a)(1), means "in 'association with or connection with.'" Id. at 35 n.4 (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84 (1992)). Congress amended § 1442(a)(1) to add "or relating to" because it wished to "broaden the universe of acts that enable Federal officers to remove [suits] to Federal court." H.R. Rep. No. 112-17, at 6 (2011). Accordingly, we, along with our sister circuits, "have consistently given this requirement a broad reading." Moore, 35 F.4th at 35 (first citing Latiolais v. Huntington Ingalls, Inc., 951 F.3d 286, 292-96 (5th Cir. 2020) (en banc); and then citing Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 258 (4th Cir. 2017)).

Section 1442(a)(1) finally requires that a defendant raise a "colorable federal defense," which "need not be 'clearly sustainable.'" Moore, 25 F.4th at 37 (quoting Willingham, 395 U.S. at 407). Rather, when determining whether removal is appropriate, courts need ask only whether a defense is colorable, not indisputable. Cf. Bennett v. MIS Corp., 607 F.3d 1076, 1090-91 (6th Cir. 2010). "[A] federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" Moore, 25 F.4th at 37 (quoting Latiolais, 951 F.3d at 297). Thus, to remove, the defense need not be a lawsuit's defining feature; if it is a single "ingredient in the mass," then it is "decisive upon the subject of jurisdiction." Mesa v. California, 489 U.S. 121, 129 (1989) (emphasis omitted) (quoting Mayor v. Cooper, 73 U.S. 247, 252 (1867)).

### iii. Disclaimer Doctrine

To prevent a defendant from removing under the federal officer removal statute, plaintiffs often disclaim in their complaint claims that would serve as the basis for removal.[6]  See St. Charles Surgical Hosp. v. La. Health Serv. & Indem. Co., 990

---

[6] Many cases examining § 1442(a)(1) disclaimers in detail are unpublished district court decisions. The parties directed us to these cases in their arguments. And the district court relied on these authorities, which was understandable given, at that time, the dearth of circuit case law on the subject.

F.3d 447, 451 (5th Cir. 2021).  In other contexts, "federal courts [have] permit[ted] individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court," by refusing to bring a removable claim. Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (considering this principle as it related to a plaintiff's attempt to stipulate, prior to class certification, that he, and the class he sought to represent, would not seek damages in excess of $5 million in the aggregate in an effort to avoid jurisdiction under 28 U.S.C. § 1332(d)(2)); cf. Connectu, LLC v. Zuckerberg, 522 F.3d 82, 93 (1st Cir. 2008) (noting that a plaintiff "has the power to 'decide what law [it] will rely upon'" and may forgo causes of action (alteration in original) (quoting The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913))).

The federal district courts that have analyzed this "disclaimer doctrine" in detail generally distinguish between two categories of § 1442(a)(1) disclaimers: (1) "express disclaimers of the claims that serve as the grounds for removal"; and (2) mere "artful pleading for purposes of circumventing federal officer jurisdiction." Dougherty v. A O Smith Corp., No. 13-1972, 2014 WL 3542243, at *10 (D. Del. July 16, 2014); see St. Charles Surgical Hosp., 990 F.3d at 451.

To defeat removal, an express disclaimer must "explicitly renounce[] claims" "upon which federal officer removal

was based." Batchelor v. Am. Optical Corp., 185 F. Supp. 3d 1358,
1363-64 (S.D. Fla. 2016) (first quoting Hayden v. 3M Co., No.
15-2775, 2015 WL 4730741, at *3 (E.D. La. Aug. 10, 2015); and then
quoting Dougherty, 2014 WL 3542243, at *10).  If a plaintiff
renounces such claims, then a defendant is not entitled to "a
federal forum" in which "to raise a defense arising out of his
official duties," Manypenny, 451 U.S. at 241, "because such a
defense pertains to claims that simply do not exist," Batchelor,
185 F. Supp. 3d at 1364 (internal quotation marks and citation
omitted).  Accordingly, a valid disclaimer must eliminate any basis
for federal officer removal so that, upon remand, there is no
possibility that a state court would have to determine whether a
defendant acted under a federal officer's authority.  See, e.g.,
id. (remanding because the disclaimer of claims arising out of the
plaintiff's exposure to asbestos while aboard naval ships meant
that the defendant could not "assert a colorable federal defense
based on government contractor immunity"); Kelleher v. A.W.
Chesterton Co., No. 15-CV-893, 2015 WL 7422756, at *3 (S.D. Ill.
Nov. 23, 2015) (same, when the plaintiff disclaimed claims from
asbestos exposure from specific federal military property and
during certain years of his military service).

     Thus, disclaimers that "clearly carve[] out certain
factual bases, whether by time span or location, such that any
alleged injury could not have happened under the direction of a

federal officer" will prevent removal.  Lopez, 2024 WL 1907396, at
*11 (quoting O'Shea v. Asbestos Corp., No. 3:19-cv-127, 2019 WL
12345572, at *7 (D.N.D. Dec. 13, 2019)).  For instance, consider
a plaintiff who disclaims any claims that arise from a location
owned and operated by the federal government.  The plaintiff then
sues a defendant for the defendant's conduct on private property
divorced from the work that it performed for a federal officer.
See Dougherty, 2014 WL 3542243, at *1.  The defendant thus could
not raise a colorable federal defense arising from its private
conduct, so § 1442(a)(1) would not be a proper basis for removal.
See Fisher v. Asbestos Corp., No. 2:14-cv-2338, 2014 WL 3752020,
at *3 (C.D. Cal. July 30, 2014); Batchelor, 185 F. Supp. 3d at
1364-65.

Distinct from express disclaimers are those that amount
to "artful pleading."  These disclaimers are never credited and
come in a few varieties.  First, there are those in which "the
'applicability [of the disclaimer] turns on the core question of
whether a defendant's alleged [unlawful behavior] was required or
caused by their relationship with the federal government.'"
Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue
Shield, No. 1:21-cv-29, 2021 WL 5194662, at *7 (S.D. Ohio Nov. 8,
2021) (quoting Martincic v. A.O. Smith Corp., No. 2:20-cv-958,
2020 WL 5850317, at *3 (W.D. Pa. Oct. 1, 2020)).  These disclaimers
are considered "circular" because, if permitted, they would "force

federal contractors to prove in state court that they were acting under the direction of the government," Marley v. Elliot Turbomachinery Co., 545 F. Supp. 2d 1266, 1275 (S.D. Fla. 2008), undermining a defendant's right "to have the validity of the defense of official immunity tried in a federal court," Willingham, 395 U.S. at 407.  A disclaimer that requires a state court to determine the nexus "between the charged conduct and federal authority" is not a valid means of precluding removal.  Id. at 409; see St. Charles Surgical Hosp., 990 F.3d at 451 (citing Marley, 545 F. Supp. 2d at 1274-75).

Second, and equally as ineffective, are waivers that "disavow[] claims based on a defendant's acts or omissions carried out under color of office, but the plaintiff, nonetheless, s[eeks] to recover based on a defendant's official acts." Batchelor, 185 F. Supp. 3d at 1363 (citations omitted).  These disclaimers serve as an attempted end run around the federal officer removal statute, "depriv[ing] the federal officer of the right" to have their immunity litigated in federal court.  In re Asbestos Prods. Liab. Litig. (No. VI), 770 F. Supp. 2d 736, 740-42 (E.D. Pa. 2011) (declaring ineffective a disclaimer excluding claims "caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States government acting in his official capacity" because "the only claims alleged against Defendant arise[] from exposure on U.S. Naval ships at

U.S. Naval shipyards"). Therefore, courts must determine whether, despite the disclaimer, the facts of the case make it likely that the plaintiff will hold a defendant liable for its official acts for which it possesses a colorable federal defense. Such a disclaimer will not foreclose removal. See, e.g., Reinbold v. Advanced Auto Parts, Inc., No. 18-cv-605, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018) (collecting cases).

### C. Application

As we previewed above, we consider whether the disclaimer in the Commonwealth's complaint prevented Caremark from removing under § 1442(a)(1).[7]  The Commonwealth argues that its

---

[7] The Commonwealth argues that the PBM Defendants, as private parties, bear a heightened burden to establish the statute's applicability. In the Commonwealth's view, the policies warranting removal for federal officers do not apply with equal force to private parties acting under a federal officer's authority. We are unpersuaded. The statute permits "any person acting under" a federal officer to remove. § 1442(a)(1) (emphasis added). It does not distinguish between private and government actors. And the Supreme Court has long recognized that private parties may remove without imposing a heightened burden. See Maryland v. Soper, 270 U.S. 9, 30 (1926) (noting that a private person acting "as a chauffeur and helper to the four officers under their orders" had "the same right to the benefit of" removal as the federal officers but denying removal on other grounds); Davis v. South Carolina, 107 U.S. 597, 600 (1883) ("[T]he protection which the law thus furnishes to the marshal and his deputy[] also shields all who lawfully assist him in the performance of his official duty."). We thus reject the Commonwealth's "narrow, grudging interpretation of § 1442(a)(1)." Manypenny, 451 U.S. at 242 (internal quotation marks and citations omitted); see Papp v. Fore-Kast Sales Co., 842 F.3d 805, 812-13 (3d Cir. 2016) (reversing remand to state court where district court required government contractor to satisfy a "special burden" to establish that it acted under federal authority).

disclaimer eliminated any basis for federal officer removal.  As it clarified at oral argument, the Commonwealth believes that its disclaimer made it so that the PBM Defendants could not claim that they (1) acted under a federal officer or (2) possessed colorable federal defenses.[8]  See § 1442(a)(1).  The district court concluded similarly.  We thus consider whether the disclaimer prevented Caremark from proving either requirement.  We hold that it did not.

The Commonwealth's complaint disclaimed any "relief relating to any federal program . . . or any contract related to a federal program."  The district court found this valid because it purportedly limited the Commonwealth's recovery to non-federal programs, a swath of claims that, the district court believed, would not require a state court to adjudicate whether the PBM Defendants acted on behalf of a federal officer.  So, the district court concluded, the PBM Defendants could not claim that their

_____

[8] The Commonwealth stated at oral argument that even with the disclaimer, it was "prepared to concede" that how Caremark conducted its negotiations was "for or related to" their federal obligations.  And it does not argue in its brief that the disclaimer somehow eliminated any connection between the PBM Defendants and the federal government.  The district court mentioned in passing that it did not see how the PBM Defendants' allegedly "non-federal" actions eliminated the "causal connection" between their actions and federal authority.  But, given the Commonwealth's apparent concession, we see no need to address the element as it relates to the adequacy of the disclaimer.  Still, to assure ourselves of subject-matter jurisdiction, we address the "for or related to" element to evaluate Caremark's prospect of removal absent the disclaimer.

work "with respect to non-federal contracts" were on behalf of a federal officer or raised a colorable federal defense.

In reaching this conclusion, the district court disagreed with Caremark that it was "not possible" to divide its services between whether they were for the federal government or non-federal healthcare plans. However, the indivisibility of those services is an important facet of Caremark's "theory of the case" that must be "credit[ed]" in evaluating removal. Acker, 527 U.S. at 432.

Under the federal officer removal statute, a federal court examines the notice of removal's well-pleaded allegations to see if the removing party has demonstrated "an adequate threshold showing" for removal. Id. Part of that task includes "credit[ing]" that party's "theory of the case" for removal. Id.; see Agyin, 986 F.3d at 175. To the extent the parties raise factual disputes about the scope of a defendant's federal obligations, Congress gave federal officers "the protection of a federal forum" in which to resolve those disputes. Willingham, 395 U.S. at 407.

As we explain in more detail below, Caremark premised removal on its theory that its PBM services for FEHBA were indivisible from its PBM services for private entities. In this way, Caremark alleged that it performed the charged conduct on behalf of a federal officer. Concluding that Caremark's actions,

nevertheless, can be so divided contradicted Caremark's theory of the case and resolved whether the challenged acts were outside the scope of its official duties.  The district court's role at this early stage is to credit that theory because federal officers "should have the opportunity to present their version of the facts" on disputes at the heart of their federal service to a federal court.  Id. at 409 (noting that, when the plaintiff's allegation that federal officers were on a "frolic" and not entitled to federal immunity contradicted the officers' assertions, a federal court should retain the case under § 1442(a)(1)).  Thus, we credit Caremark's theory of the case -- that its work for private clients was indivisible from its work for the federal government due to the structure of its rebate negotiations -- while evaluating the disclaimer.

Before addressing the effectiveness of the Commonwealth's disclaimer, we briefly consider Caremark's case for removal under § 1442(a)(1) absent the disclaimer.  Cf. One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013) (noting our "obligation to inquire into our subject[-]matter jurisdiction sua sponte").  Recall that the Commonwealth blames Caremark's rebate negotiations for insulin prices' upward rise over the years.  The Commonwealth claims that these negotiations were part of a larger scheme between Caremark and manufacturers to inflate insulin prices.  This charged conduct

is related to acts Caremark performed under OPM's authority.  When Caremark negotiates rebates on behalf of FEHBA carriers, it assists OPM in carrying out its official task of administering federal health benefits.  See Goncalves, 865 F.3d at 1249 (concluding that FEHBA carriers act under OPM when pursuing subrogation claims); Lopez, 2024 WL 1907396, at *9 (concluding that Caremark acted under federal officer with respect to "its formulary and rebate practices").   As we have explained, OPM dictates several contractual provisions that Caremark must adhere to in entering these rebate agreements -- requiring Caremark to file regular statements about whatever rebates it received, credit carriers for rebates where appropriate, and provide OPM with information related to its rebate agreements.  FEHBA Standard Contract at I-16-I-20.  These contractual obligations demonstrate that OPM exercised detailed supervision and monitoring over Caremark's provision of PBM services to FEHBA carriers, such that Caremark was acting under federal authority when it negotiated rebates. See Lopez, 2024 WL 1907396, at *7-9.

Caremark also possesses a colorable federal defense for its negotiations on behalf of FEHBA carriers.  FEHBA contains an express preemption provision, which states that "[t]he terms of any [FEHBA] contract" relating to "benefits . . . preempt any

State or local law."[9]  5 U.S.C. § 8902(m)(1).  Caremark might raise
FEHBA preemption for liability for rebate negotiations that follow
"[t]he terms of any [FEHBA] contract," id., which is "not [a]
'wholly insubstantial and frivolous'" defense, Moore, 25 F.4th at
37 (quoting Latiolais, 951 F.3d at 297); see, e.g., Jacks v.
Meridian Res. Co., LLC, 701 F.3d 1224, 1235 (8th Cir. 2012)
(finding the same defense colorable), abrogated on other grounds
by BP P.L.C. v. Mayor & City Council of Balt., 593 U.S. 230 (2021).
It is entitled to have a federal court weigh in on the validity of
that defense.

        The Commonwealth's position is that it disclaims "relief
relating to any federal program," including FEHBA, which it argues
negates Caremark's ability to satisfy the "acting under" and
"colorable federal defense" elements.  Caremark, however, alleges
that it negotiates for rebates jointly for its FEHBA-based and
non-FEHBA carriers.  And those negotiations lead to rebate
agreements, which do not distinguish between FEHBA and non-FEHBA
plans.  Considering the level of OPM's involvement in what
provisions these rebate agreements must contain, holding Caremark
liable for its role in the scheme to inflate insulin prices
necessarily    includes    holding    Caremark    liable    for    its

---

    [9] This provision does not itself confer jurisdiction through
complete preemption.  See López-Muñoz, 754 F.3d at 5-7.  But
complete preemption is distinct from defensive preemption, which
we address as a potential "colorable" defense.

negotiations -- negotiations that are at least in part for FEHBA plans, carried out pursuant to OPM's detailed requirements.

Once we credit these allegations and theory of the case "for purposes of . . . our jurisdictional inquiry," Acker, 527 U.S. at 432, the disclaimer was not effective to prevent removal. Rather, the disclaimer would permit the Commonwealth to recover "based on [Caremark's] official acts." Batchelor, 185 F. Supp. 3d at 1363 (citations omitted).  That is so for three interrelated reasons.

First, by targeting Caremark's rebate negotiations while disclaiming any "relief relating to a federal program" or contract, the Commonwealth necessarily targets what Caremark alleges are "act[s] under" a federal officer's authority. See Moore, 25 F.4th at 34.  After all, Caremark alleged that it negotiates for rebates with manufacturers simultaneously for FEHBA and non-FEHBA plans; there are no "FEHBA-only" negotiations.  And Caremark alleged that when it negotiated for rebates during the period relevant to the instant dispute, its negotiations led to rebate agreements that covered both types of plans.  So, if Caremark is liable for its conduct in negotiating rebates for private clients and FEHBA plans, then it could be liable for its conduct under OPM's direction -- no matter what the disclaimer says.  See, e.g., CaremarkPCS Health LLC, 2024 WL 3770326, at *2 (Ikuta, J., concurring) (noting that "no disclaimer, however worded," could prevent removal because

Caremark "engages in a single rebate negotiation" for its "private clients and the federal government," so California's theory of liability "necessarily" made Caremark liable for negotiating rebates on behalf of FEHBA plans). Simply put, Caremark alleges that when it negotiates rebates as OPM's contractual provisions demand, it assists the federal government with a task that the government would otherwise have to perform itself: administering federal health benefits for federal employees through FEHBA. Lopez, 2024 WL 1907396, at *7-9 (concluding that Caremark "acts under" OPM when it negotiates for rebates); cf. Goncalves, 865 F.3d at 1245 (finding that FEHBA carrier "acted under" OPM in pursuing subrogation claims because it assisted OPM with administering federal health benefits and its OPM-negotiated contracts included provisions contemplating subrogation); Ray v. Tabriz, 110 F.4th 949, 957-58 (7th Cir. 2024) (same). And the Commonwealth's lawsuit -- by targeting those negotiations -- therefore implicates Caremark's work "carried out for" OPM "authority." Moore, 25 F.4th at 34 (internal quotation marks and citations omitted).

Second, because these negotiations allegedly cannot be disassembled, crediting the disclaimer would foreclose Caremark's right to have a federal court evaluate its "colorable" preemption defense under FEHBA's express preemption provision. § 8902(m)(1). Despite the Commonwealth's artful pleading, its claims necessarily

involve Caremark's rebate negotiations within OPM's parameters -- such as remitting those rebates in full to FEHBA plans. In other words, because a single rebate negotiation may have involved both FEHBA and non-FEHBA plans, even when the Commonwealth seeks relief on behalf of a Puerto Rico resident that is covered by a non-FEHBA private carrier, Caremark may have a colorable federal defense that it acted in compliance with the terms of its FEHBA contracts when conducting negotiations on behalf of the private carrier.

Third, crediting the disclaimer would undercut § 1442(a)(1)'s requirement that federal courts determine whether a defendant acted under a federal officer's authority. The disclaimer forgoes relief "relating to any federal program," but Caremark claims that it negotiates for FEHBA and non-FEHBA plans in one fell swoop. Given this purported indivisibility, the Commonwealth's recovery for how Caremark's rebate negotiations drove insulin prices upward means that the Commonwealth could recover in the Court of First Instance for Caremark's acts under a federal officer's authority. That would deprive Caremark of the federal forum to which it is entitled. Cf. Despres v. Ampco-Pittsburgh Corp., 577 F. Supp. 2d 604, 608 (D. Conn. 2008) (rejecting a disclaimer where the plaintiffs purported to exclude all federal claims but sought to recover for asbestos exposure related to the defendant's work for the Navy).

It is thus possible for the Commonwealth "to recover based on" Caremark's "official acts" despite the disclaimer. Batchelor, 185 F. Supp. 3d at 1363. True, the disclaimer tries to disavow recovery "relating to federal programs" and contracts. But the Commonwealth seeks damages based on Caremark's rebate negotiations, even though Caremark negotiates for FEHBA and non-FEHBA plans simultaneously. Thus, the Commonwealth seeks to hold Caremark liable for acts that appear to otherwise entitle it to removal despite the disclaimer. See, e.g., In re Asbestos Prods. Liab. Litig., 770 F. Supp. 2d at 741-42.

We do not believe it possible to divide Caremark's federal and non-federal work to enforce the disclaimer for two reasons. First, we must "credit" Caremark's "theory of the case" for removal. Acker, 527 U.S. at 432. We have explained why that means that we shall consider its work indivisible at this early juncture. Second, under Caremark's removal theory as "cabined by the notice of removal," López-Muñoz, 754 F.3d at 4, Caremark conducts one negotiation, and the Commonwealth would hold Caremark liable because this negotiation allegedly inflated insulin prices. Caremark claims to have performed its actions simultaneously for private clients and the federal government, invoking a colorable preemption defense. This defense's presence is "decisive upon the subject of jurisdiction." Cooper, 73 U.S. at 252. Crediting the disclaimer thus would trample a "primary purpose[]" of

§ 1442(a)(1): "to have such defenses litigated in the federal courts." Willingham, 395 U.S. at 407.

To get around this impasse, the Commonwealth promises to "remove claims relating to . . . FEHBA" and disavow restitution, civil penalties, disgorgement, and injunctive relief relating to the same.  This promise does not address the problem.  The Commonwealth claims that how Caremark negotiated rebates inflated insulin prices.  But this "charged conduct," Moore, 25 F.4th at 34, is alleged to be indivisibly federal and non-federal.  Even with the Commonwealth's promise to tailor its relief, its theory of liability premised on the negotiations make it possible that it will recover for work that Caremark claims to have "carried out" for the federal government.  Id.

The Commonwealth relies on location-based disclaimer cases to support remand.  In its view, claims not related to a federal program are as "discrete and readily identifiable" as claims that do not arise on federal property.

We are not persuaded.  When a plaintiff disclaims claims arising from their injuries on federal property, the plaintiff's remaining claims presumably arise from their injuries on private property and are disconnected from the defendant's work for the federal government.  See Dougherty, 2014 WL 3542243, at *1.  A defendant cannot claim that it acted for a federal officer and is entitled to federal immunity in that scenario.  See id. at *8-10;

cf. Illinois ex rel. Raoul v. 3M Co., 111 F.4th 846, 849 (7th Cir.
2024) (affirming motion to remand where the State "expressly agreed
that a factfinder would not need to apportion" PFAS contamination
between federal and non-federal sources so that "for the State to
recover . . . 100% of that contamination must be sourced from the
[non-federal] facility").    These  disclaimers  eliminate  a
defendant's colorable federal defense, so there is no concern that
the defendant would be forced to litigate such a defense in state
court.   See Raoul, 111 F.4th at 849 (noting that the disclaimer
made the manufacturer's federal defense "wholly irrelevant under
the State's theory of recovery").

     The disclaimer here does not assuage that concern.  Based
on the allegedly indivisible nature of Caremark's negotiations,
the Commonwealth's "alleged injury could . . . have happened under
the direction of a federal officer," presenting a colorable federal
defense.  Lopez, 2024 WL 1907396, at *11.  And we have explained
why this means that a federal court would lose the opportunity to
adjudicate that defense -- a result that the federal officer
removal statute prohibits.   Location-based disclaimer cases are
dissimilar.

     The district court was also troubled by the consequences
of Caremark's indivisibility argument.  It believed that the
argument's "logical end" would permit "any organization that
contracts with the government" to remove "if any portion of [its]

- 36 -

work" is for "both private and government organizations, even if the government services are not at issue."  We can appreciate why this possibility concerned the district court.

But recognizing the indivisibility problem here will not permit every private entity contracting with the federal government to remove.  Government contractors may only remove when their relationship with the government "is an unusually close one involving detailed regulation, monitoring, or supervision." Watson, 551 U.S. at 153.  For example, a contractor is unlikely to meet the "acting under" requirement if it sells the government an off-the-shelf commercial product or its relationship with the government is a typical, arms-length business deal.  See, e.g., City & Cnty. of Honolulu v. Sunoco LP, 39 F.4th 1101, 1108-09 (9th Cir. 2022) (concluding that private companies' repayment of offshore leases and operation of strategic petroleum reserve was not performed under federal authority where companies acted independently and established only "a typical commercial relationship" with the government); Att'y Gen. of N.J. v. Dow Chem. Co., No. 23-cv-02449, 2024 WL 1740087, at *5-9 (D.N.J. Apr. 23, 2024) (rejecting defendant's argument that it acted under federal authority by supplying government with chemicals because it sold substantially similar products to private parties).  Nor may a defendant remove when confronted with a location-based disclaimer that limits the plaintiff's claims to those arising only on private

property and which do not concern that defendant's work for a federal officer. See, e.g., Fisher, 2014 WL 3752020, at *3 (granting remand premised on a disclaimer that limited claims to the plaintiff's "exposure to asbestos in civilian work environments" because denying remand "would affirm [the defendant's] right to assert a defense against a claim that does not exist").

But that is not so here. The Commonwealth's disclaimer failed to address Caremark's allegation that its service for the federal government is indivisible from its service for private clients. The federal officer removal statute was designed to afford a federal forum to those private actors who, as alleged here, help the federal government carry out its duties -- even if those actors perform the same service jointly for the federal government and private entities. The disclaimer did not acknowledge this potential indivisibility and cannot halt removal.

In sum, we credit Caremark's theory of the case that its federal and non-federal work is indivisible based on the way it negotiates rebates for the federal government and private clients simultaneously, and advise district courts prospectively to so credit the removing parties' theory of removal under § 1442(a)(1). Analyzing Caremark's argument for removal absent the disclaimer, we hold that it satisfies Section 1442(a)(1)'s three-part test. Because of this alleged indivisibility, the disclaimer did not

foreclose Caremark's arguments that it acted under a federal
officer and possess colorable federal defenses.  In this way, the
disclaimer did not eliminate the possibility that the Commonwealth
would recover for Caremark's official acts.  The disclaimer
therefore did not justify remand.

The district court remanded because it credited the
Commonwealth's disclaimer.  Although we do not reach the same
conclusion, we "commend the district court for attempting to parse
out [the] limited jurisprudence" on the disclaimer doctrine (while
managing ably without any First Circuit precedent on the subject).
Walsh v. Unitil Serv. Corp., 64 F.4th 1, 5 (1st Cir. 2023).  This
opinion shall hopefully clarify how district courts in our circuit
should analyze similar disclaimers.

### III. CONCLUSION

For the reasons stated, we **reverse and remand**.  The
district court shall order the removed case returned from the Court
of First Instance.  Costs are awarded to Express Scripts and
Caremark.