Nos. 24-1218, 24-1270
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
_____

## STATE OF MARYLAND,

*Plaintiff-Appellee,*

v.

## 3M COMPANY,

*Defendant-Appellant.*

_____

## IN RE: AQUEOUS FILM-FORMING FOAMS
## PRODUCT LIABILITY LITIGATION
_____

## STATE OF SOUTH CAROLINA,
*ex rel.* Alan M. Wilson, in his official capacity
as Attorney General of the State of South Carolina,

*Plaintiff-Appellee,*

**v.**

## 3M COMPANY,

*Defendant-Appellant.*

_____

On Appeals from the United States District Court for the District of Maryland
(Richard D. Bennett, District Judge) and the United States District Court for the
District of South Carolina (Richard M. Gergel, District Judge)
_____

## PETITION FOR REHEARING EN BANC
_____

March 21, 2025

[Counsel listed on following pages.]

ANTHONY G. BROWN
Attorney General of Maryland

VICTOR M. SHER
STEPHANIE D. BIEHL
ASHLEY B. CAMPBELL
Sher Edling LLP
100 Montgomery St., Suite 1410
San Francisco, California 94104
vic@sheredling.com
stephanie@sheredling.com
ashley@sheredling.com
(628) 201-6035

PATRICIA V. TIPON
Assistant Attorney General
1800 Washington Blvd, Suite 6048
Baltimore, Maryland 21230
patricia.tipon@maryland.gov
(410) 537-3061

ADAM D. SNYDER
Assistant Attorney General
120 E. Baltimore Street, Suite 2020
Baltimore, Maryland 21202
adam.snyder1@maryland.gov
(410) 767-1409

*Attorneys for Plaintiff-Appellee*
*State of Maryland*

SCOTT E. KAUFF
DEREK Y. SUGIMURA
ALEXANDER LATANISION
Law Offices of John K. Dema, P.C.
One Central Plaza
11300 Rockville Pike, Suite 112
Rockville, Maryland 20852
skauff@demalaw.com
dsugimura@demalaw.com
alatanision@demalaw.com
(301) 881-5900

JOHN D.S. GILMOUR
Kelley Drye & Warren LLP
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
jgilmour@kelleydrye.com
(713) 355-5005

MELISSA E. BYROADE
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C. 20007
mbyroade@kelleydrye.com
(202) 342-8823

ALAN M. WILSON
Attorney General of South Carolina

JONATHAN M. ROBINSON
FREDERICK N. HANNA, JR.
AUSTIN T. REED
Smith Robinson Holler Dubose &
Morgan, LLC
3200 Devine Street
Columbia, South Carolina 29205
jon@smithrobinsonlaw.com
fred.hanna@smithrobinsonlaw.com
austin.reed@smithrobinsonlaw.com
(803) 704-1178

VINCENT A. SHEHEEN
MICHAEL D. WRIGHT
Savage, Royall & Sheheen, LLP
1111 Church Street
P. O. Drawer 10
Camden, SC 29021
vsheheen@thesavagefirm.com
mwright@thesavagefirm.com
(803) 432-4391

ALGERNON G. SOLOMONS, III
Speights & Solomons
100 Oak Street, E
Hampton, SC 29924
gsolomons@speightsandsolomons.com
(803) 943-4444

W. JEFFREY YOUNG
Chief Deputy Attorney General
C.H. JONES, JR.
Senior Assistant Deputy Attorney
General
JARED Q. LIBET
Assistant Deputy Attorney General
KRISTIN M. SIMONS
Senior Assistant Attorney General
DANIELLE A. ROBERTSON
Assistant Attorney General
P. O. Box 11549
Columbia, South Carolina 29211
jyoung@scag.gov
sjones@scag.gov
jlibet@scag.gov
ksimons@scag.gov
danirobertson@scag.gov
(803) 734-3970

*Attorneys for Plaintiff-Appellee*
*State of South Carolina*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

REASONS FOR GRANTING THE PETITION........................................................6

THE DECISION CONFLICTS WITH CIRCUIT PRECEDENT HOLDING THAT FEDERAL OFFICER JURISDICTION HINGES ON THE CONDUCT CHARGED IN THE COMPLAINT................................................................................................6

    A.    The Federal Officer Removal Statute Does Not Permit Defendants to Change the Conduct Charged in a Plaintiff's Complaint. ................................................................................7

    B.    The Majority's Decision to Credit 3M's "Theory of Charged Conduct" Directly Contravenes This Court's Precedents....................12

CONCLUSION ................................................................................................17

CERTIFICATE OF COMPLIANCE ......................................................................20

# TABLE OF AUTHORITIES

## Cases

*Anne Arundel County v. BP P.L.C.*,
  94 F.4th 343 (4th Cir. 2024)..................................................... 2, 7, 8, 9, 11, 13, 14

*Arnold v. Eastern Air Lines, Inc.*,
  712 F.2d 899 (4th Cir. 1983)................................................................................3

*Baker v. Atlantic Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020)........................................................................ 15, 16

*Commonwealth's Mot. to Appoint Couns.*,
  790 F.3d 457 (3d Cir. 2015)...............................................................................10

*Delaware v. BP Am. Inc.*,
  578 F. Supp. 3d 618 (D. Del. 2022) ...................................................................11

*Government of Puerto Rico v. Express Scripts*, *Inc.*,
  119 F.4th 174 (1st Cir. 2024) ....................................................................... 16, 17

*Illinois ex rel. Raoul v. 3M Co.*,
  111 F.4th 846 (7th Cir. 2024)............................................................................15

*Jefferson County v. Acker*,
  527 U.S. 423 (1999) .................................................................................... 8, 11

*Long v. Foster Wheeler Energy Corp.*,
  No. 24-1557, 2025 WL 752487 (9th Cir. Mar. 10, 2025)....................................12

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022)...................................... 2, 7, 8, 10, 11, 12, 13, 14, 16

*Mesa v. California*,
  489 U.S. 121 (1989) ...........................................................................................11

*Sawyer v. Foster Wheeler LLC*,
  860 F.3d 249 (4th Cir. 2017)..............................................................................10

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) ..........................................................................9

*Willingham v. Morgan*,
395 U.S. 402 (1969) ........................................................................10

*Wood v. Crane Co.*,
764 F.3d 316 (4th Cir. 2014) ......................................... 2, 7, 13, 14, 15

*Young v. Tyco Fire Prods.*,
No. 21-15912, 2022 WL 486632 (9th Cir. Feb. 17, 2022) ..................11

**Statutes**

28 U.S.C. § 1442 ....................................................................... 8, 11

28 U.S.C. § 1442(a)(1) .......................................................................7

**Rules**

Fed. R. App. P. 40 ............................................................................1

Fed. R. App. P. 40(b)(2)(A) ..............................................................2

Fed. R. App. P. 40(b)(2)(D) ..............................................................2

L.R. 40(b)(iii) ...................................................................................2

L.R. 40(b)(iv) ...................................................................................2

Plaintiffs-Appellees the State of Maryland and the State of South Carolina respectfully petition for rehearing en banc in accordance with Federal Rule of Appellate Procedure 40.

## INTRODUCTION

The panel majority in these consolidated appeals held that a defendant removing on federal officer grounds may rewrite how the plaintiff's complaint "define[s] the charged conduct." Slip op. 13. This Court's cases, however, establish that, although courts credit the defendant's theory of how the charged conduct relates to federal authority, it is the plaintiff's complaint that defines the "charged conduct." The majority's contrary conclusion significantly broadens the scope of federal officer jurisdiction and threatens to "sweep lawsuits properly before state courts into federal fora." Slip op. 26 (Floyd, J., dissenting).

The States of Maryland and South Carolina sued 3M Co. for injuries resulting from 3M's manufacturing, marketing, and selling consumer products that contain per- and polyfluoroalkyl substances ("PFAS"). The States expressly and categorically disclaimed recovery for injuries caused by 3M's conduct regarding aqueous film-forming foam ("AFFF"), a class of firefighting products that contain PFAS, some of which 3M claims it manufactured to federal military specifications. Yet the majority held that *3M's* description of the charged conduct in these non-

AFFF cases was sufficiently related to its production of military AFFF to support removal. Slip op. 13-14.

That holding directly contradicts controlling authority of this Court in a manner not addressed by the decision. *See* Fed. R. App. P. 40(b)(2)(A); L.R. 40(b)(iii). This Court's precedents require a removing defendant to show that "the *conduct charged in the Complaint* . . . relate[s] to the asserted official authority" on which the defendant relies to support federal officer removal. *Anne Arundel County v. BP P.L.C.*, 94 F.4th 343, 348 (4th Cir. 2024) (quoting *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 228 (4th Cir. 2022) (emphasis in original)); *see Wood v. Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014). Thus, a defendant cannot secure federal jurisdiction by artificially constructing "a broader class of actions than the specific 'tortious conduct' the [plaintiffs] challenge" and connecting that broader category to federal authority. *Anne Arundel*, 94 F.4th at 348. Yet the majority here allowed 3M to rewrite the complaints to do exactly that.

The majority's decision also "involves questions of exceptional importance," Fed. R. App. P. 40(b)(2)(D); L.R. 40(b)(iv), namely, whether defendants may manufacture federal jurisdiction by redefining the conduct for which they are sued. Allowing defendants to do so would vastly expand the number of cases removable to federal court. "[E]n banc rehearing is justified" here, therefore, "to bring to bear the full court's consideration of a major doctrinal problem having serious

precedential implications for circuit, and possibly national, law." *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899, 918 (4th Cir. 1983).

## BACKGROUND

PFAS are a large group of toxic manmade chemicals used in a wide variety of products. (J.A. 49-51, J.A. 53-54, J.A. 272-274.) For 60 years, 3M was the primary domestic PFAS manufacturer. (J.A. 53, 281.) Beginning in the 1970s, 3M understood PFAS' toxicity and carcinogenicity (J.A. 55-57, J.A. 282-287), yet concealed their environmental and public health hazards (J.A. 57-59, J.A. 282-287, J.A. 292-294). 3M's PFAS are now present throughout both States' drinking water, groundwater, surface water, soil, sediments, and wildlife, endangering public health, public safety, and natural resources. (J.A. 63-70, J.A. 297, J.A. 303-304.)

3M used PFAS in two broad categories of products: (1) consumer goods (including Scotchgard fabric protectant, food packaging, and carpeting) and other products used outside the firefighting context (J.A. 42-43, J.A. 53-54, J.A. 272); and (2) AFFF, used for firefighting purposes on aircraft carriers and at airports, industrial facilities, fire departments, and fire-training facilities (J.A. 140, J.A. 328). Some AFFF—but not all—was made for the military and sold to the federal government. (J.A. 143, J.A. 329-330.)

Maryland and South Carolina each brought two actions in their own state courts—one targeting contamination caused only by AFFF products; the other

targeting contamination caused by non-AFFF products containing PFAS. (J.A. 40-213, J.A. 271-362.) Both States' AFFF cases were removed to federal court and are not part of this appeal.

These appeals arise from the States' non-AFFF cases. Both non-AFFF complaints expressly disclaim recovery for injuries caused by the design, production, marketing, and sale of AFFF products. (J.A. 42, J.A. 46, J.A. 275-276.) South Carolina's complaint defines "PFAS" to "expressly exclude[] Aqueous Film Forming Foam ('AFFF')," then confirms that "[t]he State is not seeking to recover through this Complaint any relief for contamination or injury related to AFFF or AFFF products used at airports, military bases, or certain industrial locations." (J.A. 275-276.) Maryland's complaint includes similar disclaimers. (J.A. 42, J.A. 46.) Both States disclaimed recovery for injuries from *all* AFFF products, not just those made to military specifications or sold to the federal government. (J.A. 42, J.A. 46, J.A. 275-276.) Still, 3M removed the States' non-AFFF cases on federal officer grounds, alleging that the States' PFAS contamination "likely has resulted at least in part from the use, storage, and/or disposal of PFAS-containing [AFFF] that 3M and others developed and sold to the U.S. military." (J.A. 9; *accord* J.A. 238.)

Both courts below remanded because of the States' disclaimers. The District of Maryland held that, because Maryland excluded AFFF from its complaint, "3M cannot establish the requisite nexus between *charged conduct* and asserted official

authority," and it is "impossible for [3M] to be held liable for damages stemming from its actions under federal authority." (J.A. 228 (emphasis added).) The District of South Carolina—the same court overseeing pending AFFF multidistrict litigation—similarly held that the "disclaimers moot 3M's government contractor defense because, whether or not 3M meets the requirements for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF." (J.A. 376.) Moreover, because injuries caused by *all* AFFF (military or not) are disclaimed, "the charged conduct here is not connected to the alleged federal authority." (J.A. 376.)

3M appealed both orders, the appeals were consolidated, and a divided panel reversed. Rejecting the States' disclaimers as "artful pleading," the majority held that 3M's description of the charged conduct in these non-AFFF cases was sufficiently related to its production of military AFFF to support removal. Slip op. 13-14. The majority acknowledged that the "charged conduct" in the complaints, "by definition, excludes 3M's production and sale of Military AFFF, thus severing 3M's alleged federal connection," but it declined to "credit how [the States] define the charged conduct." Slip op. 13. Instead, believing that the States' allegations "do[] not trump 3M's theory for removal," the majority accepted 3M's theory that "PFAS from different sources [some of which may have included military AFFF]

commingle to the point that it is impossible to identify the precise source," which established a sufficient federal nexus to satisfy § 1442. Slip. op. 15.

Judge Floyd dissented, noting that the decisions upon which the majority relied "share an important attribute" absent from this case: "the complained-of conduct could not be separated from the relevant federal authority." Slip op. 26. Here, where "non-AFFF PFAS pollution is caused by 3M's manufacturing activities that are entirely unrelated to its work as a government contractor," the alleged commingled pollution relied on by the majority is "too tenuous to support removal jurisdiction." Slip op. 27. The dissent warned that the majority holding "will sweep lawsuits properly before state courts into federal fora," potentially "foreclosing state courtrooms to plaintiffs bringing state-law claims" whenever a defendant can hypothesize "even the slightest connection between the claims at issue [and] work they have performed as government contractors." Slip op. 26-27.

## REASONS FOR GRANTING THE PETITION

### THE DECISION CONFLICTS WITH CIRCUIT PRECEDENT HOLDING THAT FEDERAL OFFICER JURISDICTION HINGES ON THE CONDUCT CHARGED IN THE COMPLAINT.

The panel majority disregarded the States' express disclaimers of 3M's AFFF conduct and improperly allowed 3M to rewrite the conduct that the States charge. Its decision thereby conflicts with at least three recent decisions of this Court in a

manner raising questions of exceptional importance.  *See Anne Arundel*, 94 F.4th

343; *Baltimore*, 31 F.4th 178; *Wood*, 764 F.3d 316.

### A. The Federal Officer Removal Statute Does Not Permit Defendants to Change the Conduct Charged in a Plaintiff's Complaint.

The federal officer removal statute allows removal of an action "commenced

. . . against or directed to . . . any officer (or any person acting under that officer) of

the United States . . . *for or relating to any act* under color of such office."  28 U.S.C.

§ 1442(a)(1) (emphasis added).  The wrongful conduct in a plaintiff's complaint

must "'relate to' the asserted official authority" the removing defendant alleges it

"act[ed] under."  *Baltimore*, 31 F.4th at 233 (citation omitted).  "The statutory text

tells us what must relate to what. . . .  It is the '*act*' for which the defendant is being

sued . . . that must relate to the asserted federal duty," not the plaintiff's "'injury,'

'harm,' or 'damages,'" or "the plaintiff's entire civil action in a general sense."  *Anne*

*Arundel*, 94 F.4th at 348 (emphasis added).

There is no dispute as to how the complaints describe the charged conduct in

these non-AFFF cases.  The States allege that 3M's manufacture, marketing, and

sale of non-AFFF PFAS products violated common law and statutory duties.  (J.A.

42-43, J.A. 53-54, J.A. 272.)  The States explicitly distinguish that conduct from

3M's conduct related to AFFF products.  (J.A. 42-44, J.A. 46, J.A. 51, J.A. 53-54,

J.A. 272-273, J.A. 275-276.)  And both States disclaim recovery for AFFF.  (J.A.

42, J.A. 46, J.A. 275-276.)  Thus, to support removal under § 1442, 3M was required to plausibly allege that its *non-AFFF* conduct—the conduct charged in the operative complaints—related to federal authority.  But 3M has never argued that its manufacture, marketing, and sale of AFFF products for the military overlapped with its manufacture, marketing, and sale of non-AFFF products.  Nor can it, because "the non-AFFF PFAS pollution is caused by 3M's manufacturing activities that are unrelated to its work as a government contractor."  Slip op. 27 (Floyd, J., dissenting).

Instead of addressing the non-AFFF-related conduct charged in the complaints, the majority (1) accepted 3M's speculation that some portion of the States' PFAS *injuries* may have been caused by AFFF because contamination from non-AFFF products might be commingled with AFFF contamination; and (2) concluded that 3M thus could assert its federal duties related to military AFFF as a defense with respect to those hypothetical commingled plumes.  Slip op. 15-16.  But this Court has made clear "what must relate to what": "the 'act' for which the defendant is being sued . . . must relate to the asserted federal duty."  *Anne Arundel*, 94 F.4th at 348; *accord Baltimore*, 31 F.4th at 233-34; *see also Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (connection required "between the charged conduct and asserted official authority").  The acts here exclude 3M's AFFF conduct.  (J.A. 42, J.A. 46, J.A. 275-276.)  Thus, if PFAS from AFFF and non-AFFF products are commingled, the AFFF portion is excluded regardless of whether some of that AFFF

was produced or sold under federal direction.  The trial court accordingly will not be called upon to determine the scope of 3M's federal duties or the merits of any federal defense.  Slip. op. 27 (Floyd, J., dissenting).

Ignoring *Anne Arundel* and *Baltimore*, the majority reasoned that "[e]ven if [the States] cannot ultimately recover for PFAS contamination from Military AFFF . . . a factfinder must . . . still decide the important causation and allocation questions."  Slip op. 19-20.  That reasoning cannot withstand scrutiny, for two reasons.  First, the propriety of removal turns on the wrongful act charged in the complaints, not "causation and allocation questions."  As this Court held in *Anne Arundel*, "[i]t is the 'act' for which the defendant is being sued—not the plaintiff's entire civil action in a general sense—that must relate to the asserted federal duty." 94 F.4th at 348.  Second, the court will never have to resolve any "causation and allocation questions" related to 3M's purported federal duties because the complaints disclaim injuries from *all* AFFF, not just military AFFF.  The majority's overbroad "causation" reasoning would improperly allow 3M to remove a broad array of environmental cases that do not implicate the scope of any federal defense. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 147, 153 (2007) (rejecting an

interpretation that would "expand the scope of the [federal officer removal] statute considerably" because its "broad language is not limitless").[1]

Nor was the majority correct in refusing to give effect to the States' disclaimers, reasoning that under "the unique lens through which [courts] consider federal officer removal," a federal court purportedly need not "credit how [the States] defined the charged conduct." Slip op. 13. The majority claimed to find the requisite federal connection in 3M's theory that "PFAS from 3M's non-AFFF products [is] indistinguishably commingled with the PFAS from 3M's Military AFFF." *Id.* at 7. But in doing so, the majority conflated two distinct considerations: what alleged conduct forms "the source of tort liability" in the States' complaints, *Baltimore*, 31 F.4th at 233, and whether "the acts complained of . . . 'relate to' acts taken under color of federal office," *Commonwealth's Mot. to Appoint Couns.,* 790 F.3d 457, 472 (3d Cir. 2015). A removing defendant's plausible allegations are entitled to deference as to the latter—whether "the charged conduct *relate[s] to* an act under color of federal office." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249,

---

[1] *Willingham v. Morgan*, 395 U.S. 402 (1969), upon which the majority also relied, is not to the contrary. Removal was appropriate there because the federal prison staff defendants asserted that their alleged conduct would have occurred in the course of their official duties, such that the factfinder would need to determine the scope of those duties to resolve official immunity defenses. *Id.* at 409. That issue cannot arise here, because 3M has not asserted its AFFF-related conduct relates to the conduct charged in the complaints: manufacturing, marketing, and selling non-AFFF products.

258 (4th Cir. 2017) (emphasis in original).  A defendant cannot expand the charged conduct, though, to cover acts that the plaintiff never charged and for which the plaintiff expressly disclaimed recovery.  *Anne Arundel*, 94 F.4th at 348.

In disregarding the States' disclaimers, the majority misapprehended the manner in which § 1442 operates as an "exception to the well-pleaded complaint rule."  Slip op. 11 (citation omitted).  Section 1442 is such an exception in that it allows removal based on a federal defense.  *Acker*, 527 U.S. at 430-31; *see also Mesa v. California*, 489 U.S. 121, 136 (1989).  But the majority misunderstood § 1442 as revoking the plaintiff's ability to "writ[e] his complaint a certain way" and handing that power to the defendant.  Slip op. 11, 14-15.  This Court's precedents hold otherwise: the federal authority alleged by the defendant must connect to "the [defendant's] *conduct charged in the Complaint*."  *Anne Arundel*, 94 F.4th at 348 (quoting *Baltimore*, 31 F.4th at 233).  Section 1442 does not authorize 3M to "freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by [the States] and then ask the Court to accept their 'theory of the case' for purposes of removal."  *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022).[2]

---

[2] *See also Young v. Tyco Fire Prods.*, No. 21-15912, 2022 WL 486632, at *1-2 (9th Cir. Feb. 17, 2022) (rejecting removal based on defendant's assertion that

The majority's decision, however, rewards this revisionism. A defendant that conducted *any* federal work may now simply assert that it is being sued for federal conduct—regardless of what charged conduct forms the basis of the complaint—as long as the effects of its federal conduct could potentially overlap with the effects of the charged conduct. The majority opinion thus threatens to "foreclos[e] state courtrooms to plaintiffs bringing state-law claims." Slip op. 27 (Floyd, J., dissenting).

### B. The Majority's Decision to Credit 3M's "Theory of Charged Conduct" Directly Contravenes This Court's Precedents.

By allowing the defendant to rewrite the charged conduct, the panel ran afoul of three decisions of this Court prohibiting just that. In *Baltimore*, the plaintiff brought claims "challeng[ing] the [defendants'] promotion and sale of fossil-fuel products without warning and abetted by a sophisticated disinformation campaign" about the causes and effects of global warming. 31 F.4th at 233. The defendants argued that, because greenhouse gases mix indistinguishably in the atmosphere, Baltimore necessarily "allege[d] that the production of fossil fuels—all of it, everywhere around the world—has created a public nuisance," including production

---

"some of those AFFFs [that caused the injury] were likely [military] AFFFs" because it merely "propose[s] an alternative theory of causation that the [plaintiffs] have expressly disavowed"); *Long v. Foster Wheeler Energy Corp.*, No. 24-1557, 2025 WL 752487, at *1 (9th Cir. Mar. 10, 2025) (affirming remand where plaintiff disclaimed injuries from "exposures of any kind to asbestos dust while he was working on Navy vessels" (brackets omitted)).

under federal direction. Appellants' Reply Brief, *Mayor & City Council of Baltimore v. BP P.L.C.*, 2019 WL 4593901, at \*21 (4th Cir. Sept. 17, 2019). This Court in *Baltimore* properly looked only to the complaint's allegations and held that "the source of tort liability" was "the concealment and misrepresentation of the products' known dangers," not fossil fuel production. *Baltimore*, 31 F.4th at 233-34. "[A]ny connection between the charged conduct" and federal authority was thus "too tenuous to support removal." *Id.* at 234.

The *Anne Arundel* defendants likewise asked this Court to "look beyond the face of the complaints" and find that the plaintiffs' claims encompassed actions under federal direction. 94 F.4th at 350. Rejecting the defendants' reframing, this Court held that the plaintiffs' claims were "factually premised on the companies' 'superior knowledge' of the negative, climate-change impacts attributable to their fossil-fuel products," and thus did not sufficiently relate to anything the defendants did under federal authority. *Id.* (brackets omitted).

Finally, in *Wood v. Crane*, this Court affirmed remand based on disclaimers similar to the States' here. The plaintiff in *Wood* alleged exposure to asbestos aboard naval vessels that used asbestos-containing valves and gaskets manufactured by the defendant. 764 F.3d at 318. The defendant removed, asserting a federal contractor defense as to the valves. *Id.* at 318-19. The plaintiff, in turn, amended his complaint to disclaim injuries caused by the valves and moved to remand. *Id.* at 319. This

Court held remand was proper because "expressly disclaim[ing] any damages" for valve-related injuries "effectively preclude[d] any defense based on the valves alone." *Id.* at 321.[3]

The States' disclaimers of injuries from particular conduct place these cases squarely within the ambit of *Baltimore*, *Anne Arundel*, and *Wood*. The States' complaints "expressly exclude[]" 3M's AFFF conduct as a basis for liability and do "not seek[] to recover . . . any relief for contamination or injury" caused thereby. (J.A. 275-276; *accord* J.A. 42, J.A. 46.) Rather, the source of liability in these cases is 3M's conduct manufacturing, marketing, and selling *non*-AFFF products (J.A. 42, J.A. 272), which, as 3M does not contest, are "entirely unrelated to" its manufacture, marketing, and sale of AFFF. Slip op. 27 (Floyd, J., dissenting). The majority nonetheless accepted the very sort of argument this Court rejected in *Baltimore* and *Anne Arundel*—that PFAS from military AFFF and non-AFFF products "indistinguishably commingle[]" in the environment and thus "inseparably contribute[] to any alleged 'non-AFFF' PFAS contamination." Slip op. 7 (citing J.A. 21); *see Baltimore*, 31 F.4th at 233-34; *Anne Arundel*, 94 F.4th at 350. That

---

[3] The majority did not address the conflict with *Wood* so much as deny that it existed. The opinion attempted to distinguish *Wood* on the ground that the defendant had not timely asserted, and thus waived, federal officer removal *as to the gaskets*. Slip op. 14-15. But that is no distinction, for 3M similarly has never asserted that it manufactured *non-AFFF* PFAS—analogous to the gaskets in *Wood*—at federal direction.

argument fails here for the same reason: federal officer removal hinges on the charged conduct. *Wood*, 764 F.3d at 321.[4]

As for the cases on which the majority relied, Judge Floyd's dissent highlights how they are distinguishable. In those cases, "*the complained-of conduct* could not be separated from the relevant federal authority." Slip op. 26 (Floyd, J., dissenting) (emphasis added). Where the charged conduct involves inseparable federally authorized and non-federally authorized actions, there is "no way to separate them for purposes of recovery," Slip op. 26 (Floyd, J., dissenting), and the defendant is entitled to a federal forum.

In *Baker v. Atlantic Richfield Co.*, for instance, the plaintiffs alleged that the defendants wrongfully "contaminated the[ir] property with 'lead, arsenic and likely other substances,'" but asserted that their claims did not "pertain to" one defendant's government-directed manufacturing that "resulted in waste streams that contained lead and arsenic." 962 F.3d 937, 939-41, 945 n.3 (7th Cir. 2020). The disclaimer

---

[4] The Seventh Circuit's decision in *Illinois ex rel. Raoul v. 3M Co*., 111 F.4th 846 (7th Cir. 2024), does not suggest otherwise. *Raoul* affirmed remand because the plaintiff "conceded at oral argument that it would not seek relief against 3M for mixed [AFFF and non-AFFF] PFAS contamination" such that to recover "for PFAS contamination in a designated area, 100% of that contamination" must have come from non-AFFF sources. *Id.* at 849. The court speculated in dicta that, without that concession, its precedents "*might* have supplied 3M with a colorable federal defense," but it did not resolve the issue or consider the arguments the States make here. *Id.* (emphasis added).

was ineffective because it purported to disclaim only injuries "aris[ing] from products [the defendant] manufactured for the government," such that resolving the scope of the disclaimer would have been coextensive with resolving the federal defense. *Id.* at 945 n.3. In other words, because the charged conduct included both private and government work, the court would need to resolve the federal contractor defense as part of its merits determination. *Id.*

Similarly, in *Government of Puerto Rico v. Express Scripts*, *Inc.*, the First Circuit held that the plaintiff's disclaimer was ineffective because the defendants' allegedly collusive conduct occurred during simultaneous negotiations for both government-run and private health insurance plans. 119 F.4th 174, 179, 189 (1st Cir. 2024). The plaintiff's disclaimer of "relief relating to any federal program" could not defeat removal because the *charged conduct*—unfair and deceptive negotiating tactics—inseparably encompassed negotiations for both private and governmental plans, "no matter what the disclaimer sa[id]." *Id.* at 191.

*Baker* and *Express Scripts* do not apply here. 3M makes no claim that its conduct manufacturing and selling non-AFFF products overlaps with its conduct in connection with AFFF. At most, *contamination* from both kinds of products may commingle, but that raises only garden-variety questions of causation and attribution that do not involve the scope of federal authority and are routinely resolved by state courts. Moreover, because contamination from AFFF is excluded regardless of

whether it was manufactured to federal specifications, "there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Express Scripts*, 119 F.4th at 187. In rejecting the States' disclaimers of injuries arising from 3M's AFFF-related *conduct*, the majority allowed jurisdiction to be dictated by a federal defense that cannot arise in these cases.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted,

ALAN M. WILSON
Attorney General of South Carolina

/s/ *Danielle A. Robertson*
W. JEFFREY YOUNG
Chief Deputy Attorney General
C.H. JONES, JR.
Senior Assistant Deputy Attorney General
JARED Q. LIBET
Assistant Deputy Attorney General
KRISTIN M. SIMONS
Senior Assistant Attorney General
DANIELLE A. ROBERTSON
Assistant Attorney General
P. O. Box 11549
Columbia, SC 29211
jyoung@scag.gov
sjones@scag.gov
jlibet@scag.gov
ksimons@scag.gov
danirobertson@scag.gov
(803) 734-3970

ANTHONY G. BROWN
Attorney General of Maryland

/s/ *Adam D. Snyder*
ADAM D. SNYDER
Assistant Attorney General
120 E. Baltimore Street, Suite 2020
Baltimore, Maryland 21202
adam.snyder1@maryland.gov
(410) 767-1409

PATRICIA V. TIPON
Assistant Attorney General
1800 Washington Blvd, Suite 6048
Baltimore, Maryland 21230
patricia.tipon@maryland.gov
(410) 537-3061

JONATHAN M. ROBINSON
FREDERICK N. HANNA, JR.
AUSTIN T. REED
Smith Robinson Holler Dubose & Morgan, LLC
3200 Devine Street
Columbia, SC 29205
jon@smithrobinsonlaw.com
fred.hanna@smithrobinsonlaw.com
austin.reed@smithrobinsonlaw.com
(803) 704-1178

VINCENT A. SHEHEEN
MICHAEL D. WRIGHT
Savage, Royall & Sheheen, LLP
1111 Church Street
P. O. Drawer 10
Camden, SC 29021
vsheheen@thesavagefirm.com
mwright@thesavagefirm.com
(803) 432-4391

ALGERNON G. SOLOMONS, III
Speights & Solomons
100 Oak Street, E
Hampton, SC 29924
gsolomons@speightsandsolomons.com
803-943-4444

*Attorneys for Plaintiff-Appellee*
*State of South Carolina*

VICTOR M. SHER
STEPHANIE D. BIEHL
ASHLEY B. CAMPBELL
Sher Edling LLP
100 Montgomery St., Suite 1410
San Francisco, CA 94104
vic@sheredling.com
stephanie@sheredling.com
ashley@sheredling.com
(628) 201-6035

SCOTT E. KAUFF
DEREK Y. SUGIMURA
ALEXANDER LATANISION
Law Offices of John K. Dema, P.C.
One Central Plaza
11300 Rockville Pike, Suite 112
Rockville, Maryland 20852
skauff@demalaw.com
dsugimura@demalaw.com
alatanision@demalaw.com
(301) 881-5900

JOHN D.S. GILMOUR
Kelley Drye & Warren LLP
515 Post Oak Blvd., Suite 900
Houston, TX 77027
jgilmour@kelleydrye.com
(713) 355-5005

MELISSA E. BYROADE
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, D.C. 20007
mbyroade@kelleydrye.com
(202) 342-8823

*Attorneys for Plaintiff-Appellee*
*State of Maryland*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 40(d)(3) because this brief contains 3,900 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ *Ashley B. Campbell*
ASHLEY B. CAMPBELL

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

STATE OF MARYLAND,                           *

          *Plaintiff-Appellee*,        *

    v.                                             *        No. 24-1218

3M COMPANY, *et al.*,                         *

          *Defendant-Appellant*.      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

STATE OF SOUTH CAROLINA,             *

          *Plaintiff-Appellee*,        *

     v.                                             *        No. 24-1270

3M COMPANY, *et al.*,                         *

          *Defendant-Appellant*.      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## CERTIFICATE OF SERVICE

     I certify that, on this 21st day of March, 2025, the Petition for Rehearing En Banc was filed electronically and served on counsel of record who are registered CM/ECF users.

                                            /s/ *Ashley B. Campbell*
                                            ASHLEY B. CAMPBELL