Nos. 24-1218, 24-1270

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

STATE OF MARYLAND,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*.

_____

IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION

_____

STATE OF SOUTH CAROLINA,
*ex rel.* Alan M. Wilson, in his official capacity
as Attorney General of the State of South Carolina,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Maryland, No. 1:23-cv-01836, and
the United States District Court for the District of South Carolina,
Nos. 2:18-mn-2873 and 2:23-cv-05979

_____

**3M COMPANY'S RESPONSE TO
PETITION FOR REHEARING EN BANC**

_____

Paul D. Clement
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com

Amir C. Tayrani
Zachary Tyree
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
(202) 955-8500
atayrani@gibsondunn.com
ztyree@gibsondunn.com

*Counsel for 3M Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

REASONS FOR DENYING THE PETITION .........................................4

    I.    The Panel Opinion Correctly Concluded That 3M Plausibly Alleged A Sufficient Nexus Between The States' Claims And 3M's Federal Government-Contractor Defense...................................4

        A.    The Panel Correctly Applied Settled Law. .................................4

        B.    The States Fail To Identify Any Error in the Panel's Analysis....................................................................................7

    II.    There Is No Conflict Between The Panel's Decision And This Court's Precedents.............................................................................10

    III.    Ruling For The States Would Create A Circuit Conflict. ...................13

CONCLUSION ...................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anne Arundel Cnty. v. BP P.L.C.*,
  94 F.4th 343 (4th Cir. 2024) ....................................................................4, 9, 11

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ............................................................6, 14, 15, 16

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*,
  996 F.3d 243 (4th Cir. 2021) ....................................................................4, 5, 8

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
  119 F.4th 174 (1st Cir. 2024)....................................................................7, 16, 17

*Kircher v. Putnam Funds Tr.*,
  547 U.S. 633 (2006)....................................................................................5

*Mayor & City Council of Balt. v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022) ....................................................5, 6, 8, 10, 11, 12

*Illinois ex rel. Raoul v. 3M Co.*,
  111 F.4th 846 (7th Cir. 2024) ....................................................................14, 15

*Willingham v. Morgan*,
  395 U.S. 402 (1969)....................................................................................9

*Wood v. Crane Co.*,
  764 F.3d 316 (4th Cir. 2014) ....................................................................12, 13

**Statute**

28 U.S.C. §1442(a)(1)...............................................................................1, 4

**Rule**

Fed. R. App. P. 40 ....................................................................................9, 10

ii

## INTRODUCTION

A panel of this Court correctly concluded that 3M plausibly alleged a sufficient nexus between the conduct charged in these suits and 3M's federal government-contractor defense for purposes of the federal-officer removal statute. That decision faithfully applied this Court's precedents and aligns with decisions from other circuits. There is no reason for the full Court to intervene.

The States of Maryland and South Carolina have each filed two suits seeking to hold 3M liable for alleged contamination of their natural resources with per- and polyfluoroalkyl substances ("PFAS"). The States allege that much of that contamination resulted from 3M's production of aqueous film-forming foam ("AFFF"), including AFFF that 3M supplied to the U.S. military pursuant to rigorous military specifications ("MilSpec"), which require the use of PFAS and give rise to a federal government-contractor defense. The States accept that the AFFF claims should be litigated in federal court under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), which provides jurisdiction over any lawsuit that is "for or relating to" a defendant's actions as a federal contractor and that implicates a colorable federal defense.

But each State sought to keep part of its claim in its preferred state-court forum by splitting its claim for PFAS contamination into two cases: one purportedly seeking recovery for harm from AFFF-sourced PFAS, the other for harm from non-

AFFF-sourced PFAS. In these "non-AFFF" cases, the States purported to disclaim relief for PFAS contamination caused by AFFF. 3M removed these suits under the federal-officer removal statute, arguing that the disclaimers did not sever the connection between the conduct charged and 3M's government-contractor defense. The district courts nevertheless remanded the suits to state court.

The panel reversed. It acknowledged that 3M's notices of removal plausibly allege that chemically identical PFAS compounds from both MilSpec AFFF and non-AFFF sources have commingled in the environment at numerous sites throughout each State. Slip op. 15-16. It then concluded that a factfinder will have to answer complex causation and apportionment questions implicating 3M's federal conduct. *Id.* at 16. As a consequence, the panel correctly concluded that there is a nexus between the complaints' charged conduct (production and supply of PFAS products, leading to alleged contamination of the States' natural resources) and 3M's federal conduct (production and supply of MilSpec AFFF for the federal government), and that the States cannot sever that link by disclaiming recovery for PFAS stemming from AFFF. *Id.* at 20.

In seeking rehearing, the States principally argue that the panel misapplied this Circuit's case law by declining to give dispositive weight to their disclaimers. But the panel properly followed established precedent by first assessing the States' complaints to identify the charged conduct. Slip op. 6, 8, 16. It then followed

established precedent in crediting "3M's theory of the case" to determine whether the "charged conduct was related to [3M's] federal work." *Id.* at 15. True, the panel did not accept the States' arguments that they could bypass issues of commingling and indistinguishability by virtue of a disclaimer; but neither did the panel permit 3M to rewrite the complaints. The panel simply recognized that federal-officer removal is a well-established exception to the well-pleaded-complaint rule. It credited—as it must—3M's entirely plausible allegation that AFFF and non-AFFF PFAS were indistinguishably commingled at sites throughout the States. And it concluded that the States' disclaimer did not eliminate causation and apportionment issues associated with 3M's federal defense that must be addressed in federal court.

In reaching that conclusion, the panel followed recent decisions from the First and Seventh Circuits holding that a plaintiff cannot defeat federal jurisdiction by purportedly disclaiming damages stemming from a defendant's federal conduct where the defendant plausibly alleges that the effects of its federal and non-federal conduct are intertwined. The States' attempts to distinguish those cases fail, and accepting the States' arguments would require creating a circuit split.

The Court should deny the States' petition for rehearing en banc.

**REASONS FOR DENYING THE PETITION**

I.    **The Panel Opinion Correctly Concluded That 3M Plausibly Alleged A Sufficient Nexus Between The States' Claims And 3M's Federal Government-Contractor Defense.**

A.    **The Panel Correctly Applied Settled Law.**

Under the federal-officer removal statute, a person acting under a federal officer can remove a suit that is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).  That requires merely "a connection or association between the act in question and the federal office."  *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021).  The panel properly identified the pivotal questions:  What is the charged conduct?  And what relationship does that conduct have to actions that 3M took under federal authority?  *See* slip op. 12-13 (quoting *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 347-49 (4th Cir. 2024)).  And it correctly stated the governing legal test:  The defendant must "plausibly allege … that the conduct charged in the complaint was taken for or in relation to asserted federal authority."  *Id.* at 4 (citing *Anne Arundel*, 94 F.4th at 347-48).

In answering those questions, the panel first noted two foundational principles, both settled law.  First, "the federal officer removal statute 'is an exception to the well-pleaded complaint rule'" that "'allows suits against federal officers to be removed despite the nonfederal cast of the complaint.'"  Slip op. 11

(quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)). Second, a court must "'credit [a defendant's] theory of the case when determining whether'" there is a connection between the charged conduct and the defendant's federal conduct. *Id.* at 12 (quoting *Arlington Cnty.*, 996 F.3d at 256).

In light of those principles, the panel recognized that it could not "blindly accept the States' theory" that the charged conduct had no "connection to 3M's federal work." Slip op. 14. Instead, a court must credit the defendant's plausible theory of the connection between the two. *Arlington Cnty.*, 996 F.3d at 256. The States suggest some tension between allowing a plaintiff to be master of its complaint and crediting the defendant's theory of removal. No such tension exists. Instead, this Court's precedents, which the panel faithfully followed, point the way by identifying the "heart" of the conduct charged based on the complaint as written and then crediting the defendant's theory of removal based on its well-pleaded factual allegations supporting removal. *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 234 (4th Cir. 2022).

Following those binding precedents, the panel first identified the conduct charged in the States' complaints. It recognized that each State filed "two overlapping lawsuits" for "alleged contamination" of natural resources: one seeking relief for contamination allegedly caused by AFFF products, and the other seeking damages only from non-AFFF products and purportedly disclaiming recovery for

contamination stemming from AFFF. Slip op. 6, 8. Looking at the complaints to identify "the heart of [the States'] claims," *Baltimore*, 31 F.4th at 234, the panel concluded that, even in these non-AFFF suits, "[b]oth States plead general PFAS contamination" of natural resources, slip op. 16.

The panel then held that 3M's notices of removal "plausibly alleged" a sufficient nexus between that charged conduct and 3M's "federal work." Slip op. 15. 3M alleged that "PFAS from [MilSpec AFFF and non-AFFF] sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways." *Id.* at 15-16. And some of the "general PFAS contamination" that the States allege is "near military bases where 3M alleges it sold Military AFFF." *Id.* at 16. Based on that, the Court recognized, it is plausible that "some of the PFAS contamination at issue even in the non-AFFF complaints may come from [3M's] Military AFFF production." *Id.* "[A]ny remediation" the States might obtain in these cases thus "would necessarily implicate work that 3M did for the federal government." *Id.*

In short, the panel concluded that, despite the States' disclaimers, a "factfinder" must inevitably determine "whether" and "how much of" any given site's PFAS contamination came from MilSpec AFFF or non-AFFF sources. Slip op. 16. "The need to unravel such challenging questions … establishes that 3M's federal work is inextricably related to the charged conduct." *Id.* (citing *Baker v. Atl.*

*Richfield Co.*, 962 F.3d 937, 943-45 (7th Cir. 2020)).   That straightforward application of settled circuit law is exactly right.

### B.   The States Fail To Identify Any Error in the Panel's Analysis.

The States attack the panel's reasoning on several bases; each falls short.   The States first assert (Pet. 9) that the "challenging" causation and allocation questions the panel identified are merely inquiries about the scope of the States' disclaimers, rather than questions about the scope of 3M's federal defense.   That is a distinction without a difference—those questions are two sides of the same coin.   In order to determine causation and allocation, the factfinder in these cases will *necessarily* have to decide what proportion of the alleged contamination is attributable to PFAS from MilSpec AFFF.   No matter how it is framed, the basic question—what contamination was caused by 3M's federal work—is the same.   And 3M is entitled to have that question resolved in federal court.   *See* slip op. 14 ("'[A] disclaimer that requires a state court to determine the nexus between the charged conduct and federal authority is not a valid means of precluding removal.'" (quoting *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 188 (1st Cir. 2024))).

The States next criticize the panel for failing to treat their AFFF disclaimers as dispositive.   They assert (Pet. 12) that the "act" for which they are suing is production of *non*-AFFF PFAS products—for which 3M has no federal defense—and that the panel thus "allow[ed] [3M] to rewrite the charged conduct."   The States

are incorrect.  The panel did not allow 3M to rewrite the States' complaints.  Instead, the panel did exactly what this Court's precedents instruct:  It took the complaints as written but read them "as a whole" to determine "the heart of [the States'] claims." *Baltimore*, 31 F.4th at 233-34.  Blind acceptance of the disclaimers would have distorted that inquiry, wrongly "elevat[ing] form over substance."  *Arlington Cnty.*, 996 F.3d at 256 (removal proper although complaint "did not even mention" federal matters).

Of course, the panel did credit "3M's theory *of [the] connection*" between the charged conduct and the federal authority based on 3M's plausible allegations about commingling and chemical indistinguishability.  Slip op. 16 (emphasis added).  That is consistent with well-established law, as the States acknowledge.  Pet. 1, 10.  And once 3M's plausible allegations are credited, there is simply no way to avoid the causation and allocation questions that "highlight" the connection between the conduct charged here and 3M's federal work, especially given that the "States plead general PFAS contamination near military bases."  Slip op. 16.  Even taking the view that the charged conduct is the production of non-AFFF PFAS products, the question remains how much of the alleged PFAS contamination in Maryland and South Carolina results from non-AFFF PFAS versus MilSpec PFAS.  That is a question about the scope of 3M's federal defense that must be litigated in federal court.

The States object that this nexus is insufficient, asserting (Pet. 9) that the panel improperly found a connection between the "plaintiff's entire civil action in a general sense" and 3M's federal conduct. Again, that is incorrect. The panel explicitly recognized such a loose connection could *not* support removal. Slip op. 13 (quoting *Anne Arundel*, 94 F.4th at 348). It simply concluded that "the charged conduct relates to [3M's] federal work" in these circumstances. *Id.* at 16-17.

Finally, the States mischaracterize the panel's decision in arguing that it is "'of exceptional importance'" because it will make too many cases removable. Pet. 2 (quoting Fed. R. App. P. 40(b)(2)(D)); *see* Pet. 12. Properly read, the opinion permits removal only where it is likely a defendant could be held liable, at least in part, for conduct for which it has a federal defense. *E.g.*, slip op. 20 ("[W]e hold that 3M's Military AFFF production is inextricably related to the States' general allegations of PFAS contamination, notwithstanding their attempts to draw a line between 3M's federal and non-federal work."). Congress enacted the federal-officer removal statute for exactly those situations—to ensure that the difficult factual and legal questions surrounding a federal officer's defense would be resolved in a federal forum. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

Indeed, the limited scope of the decision is underscored by the States' virtually unprecedented pleading strategy. While disclaimers designed to avoid federal jurisdiction are themselves relatively rare, filing two separate mirror-image suits in

an effort to keep one of them out of federal court is nearly unheard of. The States' acceptance that their AFFF suits will proceed in federal court (and that PFAS from MilSpec AFFF and non-MilSpec AFFF cannot be distinguished) further underscores that their efforts to bifurcate lawsuits in hopes of evading federal jurisdiction are artificial. In short, preventing the States' virtually unprecedented stratagem will hardly open the removal floodgates.

## II. There Is No Conflict Between The Panel's Decision And This Court's Precedents.

The States assert that the panel's decision conflicts with three others from this Court. *See* Pet. 2 (citing Fed. R. App. P. 40(b)(2)(A)). The panel decision is fully consistent with those cases.

A. The States start (Pet. 12-13) with two climate-change cases, *Baltimore* and *Anne Arundel*, but the panel acknowledged and faithfully applied the legal principles from those cases. The difference in outcome reflects the fundamentally different nature of the facts of those cases.

In *Baltimore*, the city's claims focused on "the concealment and misrepresentation of [fossil-fuel] products' known dangers." 31 F.4th at 233-34. The manufacturers removed on the grounds that they had provided products for resale on Navy bases and had extracted oil and gas on federal land. *Id.* at 229-30. This Court held that remand was appropriate. The complaint's charged conduct was "a sophisticated disinformation campaign," *not* the defendants' "fossil-fuel

10

production" itself. *Id.* at 233. As the Court explained, the complaint's "references to fossil-fuel production" "only serve to tell a broader story" that is "not the source of tort liability." *Id.* The defendants admitted that the government never "direct[ed]" them to make any of the statements or conceal any of the hazards for which they were being sued—regardless of whether they produced oil for the government or anyone else. *Id.* There was thus no connection between Baltimore's claims (based on alleged misstatements) and the asserted federal conduct (production and sale of certain fossil fuels). "If production and sales" *had* gone "to the heart of Baltimore's claims," the Court noted, it "might be inclined" to permit removal. *Id.* at 234.

*Anne Arundel* followed the same basic script. The county "d[id] not challenge the companies' production and supply of fossil fuels," instead focusing on the companies' allegedly dishonest statements and omissions. 94 F.4th at 349. Again, the defendants did not argue that "the federal government required them to market or describe their products in a certain way." *Id.* at 350. The companies' only federal activities "involve[d] fossil fuel *production* rather than *concealment or misrepresentation*"—meaning the government did not direct *any* of the alleged conduct, regardless of for whom the oil was produced. *Id.* at 349 (emphases added). The companies therefore could not "show the required relatedness." *Id.*

The States' cases are fundamentally different. "[P]roduction and sales" of PFAS-containing products plainly go "to the heart of [the States'] claims"—

precisely the fact pattern *Baltimore* said might warrant removal. 31 F.4th at 234. Production and sales are clearly at the heart of the States' claims because each filed two nearly identical lawsuits, differentiated only by a disclaimer, seeking overlapping recovery for alleged contamination by chemically indistinguishable PFAS compounds. Because 3M plausibly alleged commingling of those PFAS compounds from both MilSpec AFFF and non-AFFF sources at sites the States put at issue in these "non-AFFF" cases, these cases present difficult causation and allocation questions the disclaimers do not erase. Slip op. 16. The answers to those questions will determine the scope and availability of 3M's federal government-contractor defense, which rests on the federal government's direction that MilSpec AFFF contain PFAS. Neither *Baltimore* nor *Anne Arundel* addressed the effect of disclaimers or had to contend with alternative-causation arguments because the federal government had not directed *any* of the alleged misconduct there.

B. The States also assert (Pet. 13-14) that the panel wrongly deviated from *Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), but the panel explained why *Wood* is inapposite, slip op. 14-15. In *Wood*, the plaintiff sued Crane for asbestos exposure from both valves and gaskets. 764 F.3d at 318. Crane removed under the federal-officer statute *solely* because it said it produced the valves for the Navy. *Id.* at 318-19. Crane did not "assert the [federal-officer] defense as related to gaskets," *id.* at 319, instead making the "strategic choice" to "conten[d] that the gaskets simply

weren't theirs" because Crane said the Navy's qualified products list did not include gaskets, *id.* at 319, 324.  The plaintiff then "amended his complaint to disclaim any cause of action regarding the valves," and the district court remanded the case.  *Id.* at 320.  Crane argued on appeal that it should be allowed to assert a new basis for removal.  *Id.* at 322-24.  This Court held that it was too late to do so and that "Crane's failure to include gaskets as a ground for removal" was decisive.  *Id.* at 324.

The panel correctly concluded that *Wood* does not apply here.  Crane's strategic decision to deny responsibility for the gaskets meant it could not claim "commingling" between two different products, only one of which was federally mandated.  As the panel explained, "Crane's theory of the case that could have otherwise invalidated the plaintiff's disclaimer was never properly before us such that we could consider or ultimately credit it."  Slip op. 15.

The panel's decision is in full accord with this Court's precedents.

## III.   Ruling For The States Would Create A Circuit Conflict.

The States cannot show any conflict between the panel's decision and this Court's precedents, but accepting their position would create a split with the Seventh Circuit's holdings and the First Circuit's reasoning in materially similar cases—and create tension with the host of cases holding that courts must fully credit the defendant's theory of removal.

***The Seventh Circuit.*** The Seventh Circuit's decisions in *Baker* and *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024), are on point and consistent with the panel's decision here. In *Baker*, the plaintiffs sued DuPont for alleged lead and arsenic contamination. 962 F.3d at 939. DuPont removed, alleging that its freon production for the federal government "resulted in waste streams that contained lead and arsenic." *Id.* at 945 n.3. The plaintiffs "purport[ed] to disclaim" damages resulting from DuPont's freon production for the federal government, *id.*, focusing on lead and arsenic pollution only from DuPont's commercial activities, *id.* at 945. The Seventh Circuit held that the purported disclaimer was ineffective. Because the plaintiffs sought recovery for lead and arsenic—and DuPont's federal-government freon production released those chemicals—the suit related to DuPont's federal contracting and was removable. *See id.* at 943-45. Any dispute about the source of the toxins was "a difficult causation question that a federal court should be the one to resolve." *Id.* at 945 n.3.

*Raoul* followed directly from *Baker*. There, Illinois sued 3M, alleging PFAS contamination from a specific facility and disclaiming relief for AFFF contamination. *Raoul*, 111 F.4th at 847-48. 3M removed, asserting that some of the alleged contamination might have come from MilSpec AFFF at a downstream army arsenal. *Id.* The court explained that 3M's federal government-contractor defense remains "viab[le]" even when a plaintiff "disclaim[s]" recovery for certain

contamination because "a factfinder would need to apportion the contamination" between the alleged sources. *Id.* at 848-49. That task presents "'difficult causation question[s] that a federal court should … resolve.'" *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3). (The court ultimately remanded the case based on a far-reaching concession the States here chose not to make. *Id.*; *see* slip op. 19.)

To rule for the States, then, this Court would have to split with the Seventh Circuit. As the panel explained, per *Baker* and *Raoul*, "a company like 3M satisfies the nexus element … if the factfinder will need to identify the sources of pollutants where the company has been charged with polluting the environment through manufacturing some products for the federal government." Slip op. 16-17.

The States say *Baker* is distinguishable because the plaintiffs there "purported to disclaim only injuries 'arising from products the defendant manufactured for the government,' such that resolving the scope of the disclaimer would have been coextensive with resolving the federal defense." Pet. 16 (alterations omitted). But the States here have likewise disclaimed recovery for PFAS stemming from products 3M made for the federal government, though 3M has alleged that PFAS from those products are indistinguishably commingled in the at-issue resources. The States also argue that the charged conduct in *Baker* "included both private and government work," *id.*, but that argument rewrites *Baker*, where the plaintiffs had clearly "disclaim[ed] that their lawsuit [was] about DuPont's manufacture of Freon-12 for

the government," 962 F.3d at 945 n.3.  As in *Baker*, the States' complaints transparently attempt to substitute litigation over the scope of the disclaimers for litigation over the scope of 3M's federal defense.

In the end, the States give away the game by saying that their disclaimers render "'causation and allocation questions'" irrelevant.  Pet. 9.  In short, the States simply disagree with the Seventh Circuit and ask this Court to follow suit.

***The First Circuit.***  Siding with the States would also require rejecting the First Circuit's reasoning in *Express Scripts*.  There, Puerto Rico sued Caremark for allegedly conducting rebate negotiations unlawfully.  119 F.4th at 179.  Puerto Rico purportedly disclaimed any "'relief relating to' a federal program or contract."  *Id.* at 179, 181-82.  Caremark removed on federal-officer grounds, alleging that it had conducted just one set of "joint negotiations" setting rates both for "private parties and for the federal government."  *Id.* at 180, 183.  The court held that removal was proper.  Puerto Rico "target[ed] Caremark's rebate negotiations," so a finding against Caremark could hold it "liable for its conduct under [the government's] direction—no matter what the disclaimer says."  *Id.* at 191.  "A disclaimer that requires a *state* court to determine the nexus 'between the charged conduct and federal authority,'" the court held, "is not a valid means of precluding removal."  *Id.* at 188 (emphasis added).

The panel here explicitly adopted that reasoning. It expressed "agree[ment]" with its "sister circuits" that a disclaimer like the States' does not "'preclud[e] removal'" because the factfinder still must resolve causation and allocation questions that determine both the scope of the disclaimers *and* of 3M's defense. Slip op. 14 (quoting *Express Scripts*, 119 F.4th at 188). 3M's plausible allegations of commingling and chemical indistinguishability, like Caremark's, mean any attempt to hold 3M liable for non-AFFF-caused contamination would "necessarily" impose liability at least in part for 3M's production of MilSpec AFFF. *Id.* at 16.

The panel here declined to create a circuit split by diverging from these decisions. The en banc court should reject the States' invitation to do so.

## CONCLUSION

For these reasons, 3M respectfully requests that the Court deny the petition for rehearing en banc.

Dated:  April 10, 2025                                    Respectfully submitted,


                                                              /s/  Lauren R. Goldman
Paul D. Clement                                            Lauren R. Goldman
Clement & Murphy, PLLC                                     GIBSON, DUNN & CRUTCHER LLP
706 Duke Street                                            200 Park Avenue
Alexandria, VA 22314                                       New York, NY 10166
(202) 742-8900                                             (212) 351-2375
paul.clement@clementmurphy.com                            lgoldman@gibsondunn.com

                                                          Amir C. Tayrani
                                                          Zachary Tyree
                                                          GIBSON, DUNN & CRUTCHER LLP
                                                          1700 M Street, N.W.
                                                          Washington, DC 20036
                                                          (202) 955-8500
                                                          atayrani@gibsondunn.com
                                                          ztyree@gibsondunn.com

                    *Counsel for 3M Company*

18

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 32(g)(1) and 40(b)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14-point font). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 3,898 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

April 10, 2025                                  Respectfully submitted,

                                                      */s/ Lauren R. Goldman*
                                                Lauren R. Goldman
                                                GIBSON, DUNN & CRUTCHER LLP
                                                200 Park Avenue
                                                New York, NY 10166
                                                (212) 351-2375
                                                lgoldman@gibsondunn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2025, I caused a copy of the foregoing response to the petition for rehearing en banc to be served via ECF on all counsel of record.

/s/ Lauren R. Goldman

Lauren R. Goldman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2375
lgoldman@gibsondunn.com
